**STATE OF HAWAII**, Plaintiff–Appellee, v. **JUDY A. MEDEIROS**, Defendant–Appellant

NO. 13785

(CASE NO. CAP1 OF 2/22/89)

MAY 23, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

40

OPINION OF THE COURT BY HEEN, J. ·

Defendant–Appellant Judy A. Medeiros (Medeiros) appeals from her conviction after a bench trial for Theft in the Fourth Degree, Hawaii Revised Statutes (HRS) § 708–833 (Supp. 1989), a petty misdemeanor.[1] We find no error and affirm.

----

[1] Hawaii Revised Statutes (HRS) § 708–833 (Supp. 1989) provides:

**Theft in the fourth degree.** (1) A person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $100.

(2) Theft in the fourth degree is a petty misdemeanor.

Medeiros and her husband pleaded not guilty to a charge of stealing a cassette tape (tape) from Gem's Department Store in Waipahu (Gem's). Medeiros was tried separately. At her trial the State called Erik Edika (Edika), a security guard at Gem's, who testified that he observed Medeiros' husband take the tape from a display and conceal it between himself and the child he was carrying. Edika then saw Medeiros approach her husband, who dropped the tape into her bag. Edika followed the couple as they walked past nine operating cash registers and left the store. Once outside, Edika confronted the couple and recovered the tape from Medeiros' bag.

A short recess followed Edika's testimony. When court reconvened, the following took place:

Ms. Won [Prosecutor]: Your Honor, I believe there will be a change of plea.

Mr. Cooper [Medeiros' Attorney]: Yes, Your Honor, we've discussed this case; I've discussed this case with my client and the prosecutor and I have reached an agreement whereby for the change of plea, prosecution will recommend a fifty dollar fine.

The Court: All right, how does the . . . Do you make a motion for change of plea?

Mr. Cooper: Yes, Your Honor.

The Court: Any objection to that motion? The motion will be granted. What is the proposed new plea?

Mr. Cooper: Defendant will enter a no contest plea.

The Court: On the plea of no contest, the court's going to find the defendant guilty. [2] Mrs. Medeiros, on or

---

[2] We note that the court's finding of guilt could be interpreted as an acceptance of the *nolo contendere* plea. However, the acceptance would be invalid in view of the provisions of Rule 11(d), Hawaii Rules of Penal Procedure (HRPP) (1988).

about April 11, 1988, in Gem's in Waipahu, did you take a cassette tape that didn't belong to you without paying for it?

Mr. Cooper: Defendant has entered a no contest plea, Your Honor.

The Court: Mr. Cooper, I have to have some factual findings to support the plea.

(Footnote added.)

The court then questioned Medeiros regarding the facts of the alleged offense, but she refused to respond. The court thereupon refused to accept the plea, reinstated the not guilty plea, and went on with the trial. The State put on one more witness and the parties stipulated to the testimony of another witness representing Gem's. Medeiros put on no evidence, and the court found her guilty on November 30, 1988.

Upon finding Medeiros guilty, the judge immediately sentenced her to five days in jail. However, he stayed the mittimus pending the disposition of Medeiros' husband's case and the receipt of a pre–sentence report which he ordered prepared.

## I.

Medeiros first argues that the trial judge erred when he refused to accept her *nolo contendere* plea after she refused to provide him with a factual basis for the plea. We disagree.

*Nolo contendere* pleas are allowed by Rule 11, Hawaii Rules of Penal Procedure (HRPP) (1988). Rule 11(b) reads:

**Nolo Contendere.** A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

Rule 11(d) continues:

> **Insuring that the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

Also pertinent to this case is Rule 11(f), which reads:

> **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

A *nolo contendere* plea is not an admission of guilt; however, for the purposes of the case in which it is entered it has the same effect as a guilty plea. It constitutes an admission of all of the essential elements of the charge and is tantamount to an admission of guilt. The court is vested with wide discretion to accept or refuse a *nolo contendere* plea. 1 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 177 (1982).

Rule 11, HRPP, is patterned after Rule 11 of the Federal Rules of Criminal Procedure. When the federal rules were enacted in 1946, a defendant was allowed to plead *nolo contendere* with the consent of the court. No limits were placed on the exercise of the court's discretion to accept or reject the plea. As a result of criticism directed at the rule and its operation, the rule was amended to its present form in 1975. Note, *Nolo Contendere: Acceptance in the Federal Courts*, 10 Mem. St. U.L. Rev. 550, 553 (1980). The significant change in the federal rule is the addition of the provision that the *nolo contendere* plea "shall be accepted by the court only after due consideration of the views of the parties and the

interest of the public in the efficient administration of justice." Our Rule 11 contains the same language.

The new language restricts only the courts' discretion to accept a *nolo contendere* plea. The courts' discretion to reject the plea is left undisturbed, and the courts are "permitted to reject the plea at will." *Id.* at 569–70. "[I]n requiring the courts to take competing factors into consideration before accepting a *nolo* plea, the drafters must also have intended that the courts accept the plea more discriminately." *Id.* at 570. In *United States v. Gratton*, 525 F.2d 1161 (7th Cir. 1975), *stay denied*, 423 U.S. 1067, 96 S. Ct. 1090, 46 L. Ed. 2d 658 (1976), the court stated: "[I]t seems at least arguable that the acceptance of a *nolo* plea is so broadly a matter of discretion that a judge's adoption of a policy against such a plea is itself within his discretion[.]" 525 F.2d at 1163. And Professor Wright opines that "it is wholly unlikely that refusal to accept the plea would be regarded as error on appeal." C. Wright, *supra*, at 668.

In light of the history of the federal rule, we hold that the limiting language of Rule 11(b) operates only as a prerequisite to the court's acceptance of a *nolo contendere* plea. On the other hand, the court's rejection of a *nolo contendere* plea is within its broad discretion and will not be overturned on appeal absent a manifest abuse. *See United States v. Gratton, supra.*

The main purpose of the *nolo contendere* plea is to allow the court and the defendant to avoid the time and expense of trial. If the court allows the plea without requiring the defendant to present a factual basis for the plea, the defendant avoids having to admit guilt, "saves face," and is shielded from having the plea used against him or her in any civil suit based on the alleged illegal conduct. Note, *supra*; C. Wright, *supra*.

Defendant argues that the court abused its discretion in this case by rejecting her *nolo contendere* plea when she refused to

provide a factual basis.[3] We disagree. The judge's "refusal to accept the plea without requiring a factual basis therefor is not a basis for reversal, for acceptance of a *nolo* plea is solely a matter of grace, something to which defendants are by no means automatically entitled." *United States v. Cepeda Penes*, 577 F.2d 754, 756 (1st Cir. 1978).

At oral argument Medeiros contended that, since she is subject to a civil suit by Gem's for actual damages and statutory penalties pursuant to HRS chapter 663A (1985), the trial court abused its discretion in requiring her to furnish a factual basis for her *nolo contendere* plea. We disagree. As we have noted, the plea is strictly a matter of grace, *Cepeda Penes*, *supra*, and the fact that civil consequences may follow from Medeiros' compliance with the court's demand that she provide the factual basis for the plea does not, in our view, vitiate the broad discretion of the court to reject the plea upon her refusal to do so.

## II.

Medeiros' second point on appeal is that the trial judge erred in sentencing her before requesting a pre–sentence report pursuant to HRS § 706–601 (Supp. 1989), which reads:

(1) The court shall order a pre–sentence correctional diagnosis of the defendant and accord due consideration to a written report of the diagnosis before imposing sentence where:

(a) The defendant has been convicted of a felony; or

---

[3] Medeiros has cited *Miller v. State*, 617 P.2d 516 (Alaska 1980), in support of her position. However, the rule in Alaska is that "a defendant may plead *nolo contendere* as a matter of right." *Id.* at 518.

    (b)  The defendant is less than twenty–two years of age and has been convicted of a crime.

    (2)  The court may order a pre–sentence diagnosis in any other case.

    (3)  With the consent of the court, the requirement of a pre–sentence diagnosis may be waived by agreement of both the defendant and the prosecuting attorney.

The argument is without merit.

First, Medeiros was convicted of a petty misdemeanor, and was 31 years of age. Thus, the court was not required to order a pre–sentence report before imposing sentence, although it could have done so under HRS § 706–601(2). Second, we think that, even if HRS § 706–601(2) is applicable, the intent of the statutes relating to sentencing and pre–sentence reports has been complied with.

HRS § 706–602 (1985) requires that a pre–sentence report contain, *inter alia*, "an analysis of the circumstances attending the commission of the crime," the defendant's criminal history, family background, mental and physical condition, and economic status. HRS § 706–604(2) (Supp. 1989) requires that a defendant be supplied with a copy of the pre–sentence report and afforded a fair opportunity to controvert or supplement it.

On February 22, 1989, the court again considered Medeiros' sentence, together with a motion for reconsideration of sentence which she had filed. The pre–sentence report had been completed by then and was referred to by the court and defense counsel in discussing the sentence. Medeiros' argument that the November 30, 1988 "predetermination of sentence" indicates that the pre–sentence report was not considered by the court is not supported by the record of the February 22, 1989 hearing.

### III.

Finally, Medeiros argues that when she was not given an opportunity by the court to say anything on her behalf prior to sentencing, either on November 30, 1988, or February 22, 1989, the court violated HRS § 706–604(1)[4] and Rule 32(a), HRPP (1977).[5] She asserts that this case should be remanded for sentencing before a different judge after compliance with the law. We disagree.

> Whether the defendant must be queried personally [before sentencing], and whether he must speak personally, or whether his counsel may substitute for him in such regard, appears to depend on the wording and interpretation of the statute concerned.[6]
>
> In the absence of a statute specifically requiring that the opportunity to answer be given to the defendant personally, it appears that an answer by counsel, rather than by the defendant, will comply with the statute.

Annotation, *Necessity And Sufficiency Of Question To Defendant As To Whether He Has Anything To Say Why Sentence Should Not Be Pronounced Against Him*, 96 A.L.R.2d 1292, 1331 (1964) (footnote added).

---

[4] HRS § 706–604(1) (Supp. 1989) reads as follows:

> Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of his disposition.

[5] Rule 32(a), HRPP (1977) reads in pertinent part as follows:

> Before suspending or imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of his disposition.

[6] The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say prior to sentencing is not constitutional error. *See Hill v. United States*, 368 U.S. 424, 82 S. Ct. 468, 7 L. Ed. 2d 417, *reh'g denied*, 369 U.S. 808, 82 S. Ct. 640, 7 L. Ed. 2d 556 (1962); *cf. Ashe v. North Carolina*, 586 F.2d 334 (4th Cir. 1978).

In *State ex rel. Knott v. Tahash*, 281 Minn. 305, 161 N.W.2d 617 (1968), the court held that the defendant had not been deprived of his right of allocution, even though he was not queried by the court, where his attorney, addressing the court in defendant's behalf, gave defendant's version of the crime and an accurate statement of the defendant's background. *Accord, People v. Cross*, 213 Cal. App. 2d 678, 28 Cal. Rptr. 918 (1963).

We hold that the requirement of HRS § 706–604(1) and Rule 32(a), HRPP, that a defendant be afforded a fair opportunity to be heard before being sentenced, is satisfied where the defendant is heard through counsel. We do not view the statute or the rule as requiring the court to affirmatively ask the defendant if he or she wishes to address the court.

· Here, although the court erred when it originally imposed sentence on Medeiros on November 30, 1988, the law was satisfied at the February 22, 1989 hearing when defense counsel outlined for the court that Medeiros had three children; was employed as a receptionist with ambitions of becoming a cosmetologist; was unemployed at the time of the incident; that she was sorry for the crime; that she was willing to pay a fine or do community service; that she would lose her job if incarcerated; and that she did not have an extensive criminal history, having only a "prior theft and a Contempt of Court." After defense counsel's remarks, the court affirmed the sentence. Medeiros did not ask to address the court and defense counsel did not indicate she wished to do so. In these circumstances, the lower court did not reversibly err in not asking Medeiros personally if she wished to speak before imposition of sentence.

Medeiros' reliance on *Green v. United States*, 365 U.S. 301, 81 S. Ct. 653, 5 L. Ed. 2d 670, *reh'g denied*, 365 U.S. 890, 81 S. Ct. 1024, 6 L. Ed. 2d 201 (1961), and *State v. Goodrich*, 97 Idaho 472, 546 P.2d 1180 (1976), is misplaced. The rule in the federal courts and in Idaho requires the court to affirmatively

address the defendant and ask or determine if he or she wishes to present any information in mitigation of sentence. Neither does *State v. Martin*, 56 Haw. 292, 535 P.2d 127 (1975), also cited by Medeiros, assist her. In *Martin* it was held to be reversible error for the trial court to refuse, *inter alia*, to "entertain oral argument or comment by appellant's counsel or hear from the appellant prior to imposing sentence." *Id.* at 293, 535 P.2d at 128. That is not the situation here.

Affirmed.

*Richard W. Pollack*, Public Defender (*Carrie Nakaoka*, Deputy Public Defender, with him on the opening brief), for defendant–appellant.

*Patricia Loo Goodness*, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff–appellee.