883 P.2d 663

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Clarence Chung Hin CHOW, Defendant–Appellant.**

**No. 16547.**

Intermediate Court of Appeals of Hawai'i.

Oct. 20, 1994.

Amie L. Thompson, Deputy Public Defender, Honolulu, for defendant-appellant.

Charlotte J. Duarte (Edwin Nacino, on the brief), Deputy Pros. Attys., City & County of Honolulu, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Clarence Chung Hin Chow (Defendant) was convicted of two traffic offenses. We affirm the convictions, but remand for resentencing because Defendant's right of allocution was denied.

Defendant was charged with driving under the influence of intoxicating liquor (DUI) (Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (Supp.1992)), making a prohibited turn against a red light (illegal turn) (HRS § 291C–32(a)(3) (1985)), and driving after his license was suspended or revoked for driving under the influence of intoxicating liquor (driving with a revoked license) (HRS § 291–4.5 (Supp.1992)).

On September 8, 1992, a bench trial was held. At the close of the State's case, the defense moved for a judgment of acquittal. The court granted the motion as to the DUI charge, but denied the motion as to the other charges. In his case, the defense presented two witnesses, one of whom was Defendant. Following argument by counsel, the court found Defendant guilty of the driving with a revoked license and illegal turn charges. Defendant then requested findings.

The court thereafter noted that this was Defendant's "first conviction of [driving with a revoked license]" and sentenced him to "the minimum term of three (3) days in jail, plus a minimum fine of $250.00 (two hundred and fifty dollars)" and "a one year license suspension[.]" The court also fined Defendant $35 for the illegal turn. Thereupon, Defendant's request to stay his sentence pending appeal was granted. Having received permission to address the court, Defendant stated that he was not the driver of the subject vehicle, but apparently did not complete his statement. Indicating that it was "not the time to go into the merits," the court declared that it "didn't know what [Defendant] wanted addressed to the court, but [it would] not entertain any matters about the facts of the case."[1]

Defendant appeals from the judgment and sentence entered September 8, 1992.

On appeal, Defendant makes three arguments: (1) He was not the driver of the automobile; (2) His convictions for driving with a revoked license and illegal turn were not supported by sufficient evidence; and (3) He was denied his right of allocution.

I.

We review the evidence adduced at trial. On December 8, 1991, on the island of O'ahu, Defendant and Jerry Larsen (Larsen) were traveling in a Mazda RX–7 vehicle which belonged to Defendant's mother.

At approximately 2:38 a.m., Officer Victor Tolentino was traveling Ewa (west) on Ala Moana Boulevard in the lane nearest the median strip. He observed a silver two-door sedan make a right turn from South Street

---

1. The following occurred:

THE COURT: .... Mr. Chow?
MR. CHOW: I don't—a lot of things that the officer said that wasn't true, and I was not the driver.
THE COURT: Well, Mr. Chow, this is not the time to go into the merits.

MR. CHOW: Okay.
THE COURT: I didn't know what you wanted addressed to the Court on, but I will not entertain any matters about the facts of the case. I have made a decision based on the evidence that I had heard.
MS. ABANES [defense counsel]: Thank you, Your Honor.

on to Ala Moana Boulevard. Because the officer had the green traffic light and was familiar with the area, he believed that the driver had made a prohibited turn against a red traffic light. Later, the officer verified that the traffic lights were operating properly. There were two signs, each prohibiting a right turn against a red traffic light at the intersection. The signs faced the vehicle's direction of travel and were clearly visible.

Activating his blue lights, the officer stopped the vehicle at Ala Moana Boulevard and Punchbowl Street.

The officer did not see any movement in the vehicle and kept his attention on its occupants at all times for "officer safety." Approaching the driver's side of the vehicle, he observed Defendant seated behind the wheel and "an oriental male" in the front passenger seat.

Although the officer requested Defendant's driver's license, registration, and insurance, Defendant did not respond. After the officer repeated his request, Defendant handed the officer his college identification card. When the officer again asked for his driver's license, Defendant disclosed that he did not have a driver's license and handed the officer court papers from a prior DUI charge. Defendant's driver's license had been suspended for ninety days and he had a "[p]ermit to drive under License Suspension" from September 30, 1991 to December 28, 1991. Defendant acknowledged that the permit allowed him to drive to and from work.

According to the officer, Defendant's speech was slurred, his breath had an odor of alcohol, and his eyes were glassy, red, and bloodshot. Based on these observations, the officer had Defendant exit the vehicle and perform a field sobriety test. Concluding that Defendant performed "poor[ly]," he arrested Defendant for DUI.

On the other hand, Defendant asserted that Larsen was the driver of the vehicle. Larsen drove the vehicle because Defendant's license was suspended, Defendant's camera equipment to be used that night was already in the vehicle, and Larsen had driven a long way in his own car to get to Defendant's house. Neither Defendant nor Larsen, who also testified, contested the fact that the right turn was made.[2]

Defendant maintained that when the officer pulled them over, he was sitting in the back seat loading a camera with film. Larsen related that camera equipment was in the hatchback and the back seat area of the vehicle.

After they were stopped, Defendant said, "[Larsen], move" and Larsen moved over to the passenger seat but was "fumbling or something." Defendant pulled a latch, the driver's seat "slid[ ] forward" and he exited the vehicle. He walked towards the officer, but the officer told him to get back into the vehicle. Defendant did so, and sat in the driver's seat. It was difficult to see out the back window of the vehicle because it was tinted and covered by louvers.

Larsen indicated that he was in the driver's seat and Defendant was in the back seat when they were stopped. Defendant said, "Let me take care of it[,]" and got out of the vehicle through the driver's door. When Defendant exited, Larsen was still in the front seat but Defendant could get out because the front seat tilted forward.

## II.

■ Defendant contends the court's finding that Defendant was the driver of the vehicle was clearly erroneous. A finding of fact is clearly erroneous if " 'despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed.' " *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (quoting *State v. Hutch*, 75 Haw. 307, 328, 861 P.2d 11, 22 (1993)).

■ Defendant asserts that the officer did not actually see him driving the vehicle when the illegal turn was made and both Defendant and Larsen testified that Larsen was driving the vehicle. However, the court found the officer's testimony credible and

2. Larsen testified that "[they] left Studebaker's and then [they] made a [right] turn on to Ward Avenue." But when questioned further he stated that "I think it [ (Ward Avenue) ] was [the street that I turned on to]."

"Defendant to be unbelievable." In its oral ruling, the court stated that it found "[D]efendant's version of what happened highly improbable inasmuch as [Defendant] stepping [sic] out of the car to approach the officer when he was not the driver of the car"[3] and "Larsen driving [Defendant's] car, driving his car to [Defendant's] house and driving [Defendant's] car from there."

It is well established that " 'an appellate court will not pass upon issues dependent upon [the] credibility of witnesses and the weight of the evidence; this is the province of the trial judge.' " *Id.* 76 Hawai'i at 180, 873 P.2d at 59 (quoting *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 116–17, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992)). In the argument section of his Opening Brief, Defendant does concede that it was for the district court to decide the extent to which a witness' testimony would be believed.

But, Defendant argues that the court relied on speculation and made unreasonable inferences. Of course, "guilt in a criminal case may be prove[n] beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence." *State v. Bright,* 64 Haw. 226, 228, 638 P.2d 330, 332 (1981). *Accord State v. Batson,* 73 Haw. 236, 245–46, 831 P.2d 924, 930 (1992) ("the trial court, as trier of fact, 'may draw all reasonable and legitimate inferences and deductions from the evidence adduced....' " (quoting *State v. Nelson,* 69 Haw. 461, 469, 748 P.2d 365, 370 (1987))); *State v. O'Daniel,* 62 Haw. 518, 528–29, 616 P.2d 1383, 1391 (1980) ("[r]easonable inferences drawn from circumstantial evidence may be used to prove a criminal case beyond a reasonable doubt").

The officer testified that he pulled the vehicle over after seeing the illegal turn. After the vehicle was stopped, the officer recounted that he saw no movement within the vehicle. While Defendant contends that the officer could not see into the vehicle, the officer stated that he could see into the vehicle and Defendant and Larsen testified that they could see out the back window. When the officer approached the driver, Defendant was seated in the driver's seat. Because the officer had the vehicle under observation from the time he saw the violation until the vehicle was stopped, the court might reasonably infer from the officer's testimony that Defendant was driving the vehicle when it made the illegal turn.

Accordingly, we are not left with a " 'definite and firm conviction that a mistake has been committed,' " and therefore cannot hold the finding clearly erroneous. *Furutani,* 76 Hawai'i at 179, 873 P.2d at 58 (quoting *Hutch,* 75 Haw. at 328–29, 861 P.2d at 22 (1993).

### III.

The standard on appeal of a trial judge's finding of guilt is whether the convictions are supported by substantial evidence, considering the evidence in the strongest light for the prosecution. *In re Doe,* 76 Hawai'i 85, 92–93, 869 P.2d 1304, 1311–12 (1994). *Accord State v. Sujohn,* 5 Haw.App. 459, 697 P.2d 1143 (1985); *State v. Cannon,* 56 Haw. 161, 532 P.2d 391 (1975).

We are required to sustain the conviction[s] " 'so long as there is substantial evidence tending to support the requisite finding for conviction.' " *State v. Matias,* 74 Haw. 197, 207, 840 P.2d 374, 379 (1992) (quoting *State v. Ildefonso,* 72 Haw. 573, 576–77, 827 P.2d 648, 651 (1992) (quoting *State v. Tamura,* 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981))). Thus, " '[i]t matters not if a conviction ... might be deemed to be against the weight of the evidence....' " *Id.*

*State v. Gabrillo,* —— Hawai'i ——, 877 P.2d 891, 895 (App.1994). Substantial evidence is " 'evidence which a reasonable mind might accept as adequate to support [the] conclusion[.]' " *Id.* at ——, 877 P.2d at 896 (quoting *State v. Lima,* 64 Haw. 470, 475, 643 P.2d 536, 539 (1982)). *See also In re Doe,* 76 Hawai'i at 93, 869 P.2d at 1311–12.

Defendant only contends the evidence was insufficient to prove he was the driver of the vehicle. Based on the matters set forth in

---

**3.** Defendant did not explain why he got out of the vehicle and the State did not elicit this information on cross-examination.

Section II., *supra,* we conclude from the record that there was evidence which a reasonable mind might accept as adequate to support the conclusion that Defendant was the driver of the vehicle. We hold, therefore, that there was substantial evidence to support Defendant's convictions of driving with a revoked license and illegal turn.

### IV.

### A.

■ Finally, Defendant argues that the court denied him his right of allocution. Allocution is "the defendant's right to speak before sentence is imposed[.]" R. Dawson, *Sentencing* 52 n. 83 (1969). As related previously, the court did not afford Defendant the opportunity to be heard before imposing sentence and only afforded him an attenuated opportunity to speak after he was sentenced.

Defendant directs us to HRS § 706–604(1) (Supp.1992)[4] and Hawai'i Rules of Penal Procedure (HRPP) Rule 32(a). Both statute and rule, on their faces, mandate that the court "shall" afford the defendant an opportunity to be heard "before" imposing sentence. HRS § 706–604(1); HRPP Rule 32(a). HRS § 706–604(1) provides that "*[b]efore* imposing sentence, the court *shall* afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition." (Emphases added.) HRPP Rule 32(a) also provides that "*[b]efore ...* imposing sentence, the court *shall* afford a fair opportunity to the defendant to be heard on the issue of his disposition." (Emphases added.)

■ Citing *State v. Medeiros,* 8 Haw.App. 39, 791 P.2d 730, *cert. denied,* 71 Haw. 669, 833 P.2d 901 (1990), the State contends that Defendant was afforded his right of allocution when, after he was sentenced, the court allowed him to speak. Yet, *Medeiros* indicated that the trial court "erred when it originally imposed sentence on [the defendant]" without allowing her to be heard prior to her

sentencing. *Medeiros,* 8 Haw.App. at 48, 791 P.2d at 736. *See also State v. Martin,* 56 Haw. 292, 535 P.2d 127 (1975) (court erred in not allowing defendant or defense counsel to speak prior to sentencing).

The State, however, relies on the proposition in *Medeiros* that the denial of the right to be heard before sentencing was cured by a later hearing to reconsider the sentence. *Id.* But, following submission of briefs in this case, the Hawai'i Supreme Court found this proposition in *Medeiros* to be erroneous. It held that denial of allocution at the time of the original sentencing could not be cured at a subsequent hearing to reconsider the sentence. *Schutter v. Soong,* 76 Hawai'i 187, 208, 873 P.2d 66, 87 (1994).

> Once a defendant is denied the opportunity to be heard [before being sentenced], *this denial of due process* cannot be corrected later [by] a motion for reconsideration. We, therefore, overrule *Medeiros* insofar as it holds that the denial of *the right to pre-sentence allocution* may be cured later at a hearing to reconsider the sentence.

*Id.* (emphases added). While *Schutter* involved contempt proceedings, the Hawai'i Supreme Court's overruling of *Medeiros,* which involved a criminal theft conviction, clearly extended the *Schutter* rule to non-contempt criminal cases. It follows, then, that allowing Defendant to speak after the sentence did not remedy the failure to afford Defendant "a fair opportunity ... to be heard on the issue of his disposition" before sentence. HRPP Rule 32(a). Thus, the denial of a fair opportunity to be heard on a defendant's disposition before imposing sentence violated the clear mandate of HRS § 706–604(1) and HRPP Rule 32(a).

■ But, more significantly, by invoking "due process" in *Schutter,* the Hawai'i Supreme Court recognized a constitutional "right to pre-sentence allocution." *Schutter,* 76 Hawai'i at 208, 873 P.2d at 87. As a result, Defendant's right to be heard in criminal proceedings prior to sentencing is consti-

---

4. Hawai'i Revised Statutes (HRS) § 706–604(1) (Supp.1992) "is a restatement of the existing rule of procedure and practice." Commentary to HRS § 706–604 (1985) (footnote omitted). The existing rule at the time the rule was first promulgated was Hawai'i Rules of Criminal Procedure Rule 32(a) which has been replaced by Hawai'i Rules of Penal Procedure (HRPP) Rule 32(a).

tutionally protected, independent and apart from the mandates of statute, under HRS § 706–604(1), and rule, under HRPP Rule 32(a).[5] *Cf., DeAngelo v. Schiedler*, 306 Or. 91, 757 P.2d 1355 (1988) (procedural and constitutional right of allocution); *State v. Brown*, 528 A.2d 1098 (R.I.1987) (constitutional right of allocution); *Christy v. State*, 731 P.2d 1204, 1207 (Wyo.1987) (right of allocution protected by rule and state constitution).

Although *Schutter* did not expressly indicate whether such a right is protected under the United States Constitution or the Constitution of the State of Hawai'i, we think it evident from the holding in *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that allocution is not a right protected by the United States Constitution. In *Hill*, the United States Supreme Court held that the right of allocution as provided to a defendant under Federal Rule of Criminal Procedure 32(a) is not protected by the United States Constitution. Necessarily, then, the right of allocution is a right guaranteed under the due process clause, article I, section 5, of the Constitution of the State of Hawai'i.[6] It is well established that broader rights may be afforded to our citizens under our state constitution than under the federal constitution. *See, e.g., Baehr v. Lewin*, 74 Haw. 530, 852 P.2d 44 (1992); *Pele Defense Fund v. Paty*, 73 Haw. 578, 837 P.2d 1247 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993); *Hawaii Housing Authority v. Lyman*, 68 Haw. 55, 704 P.2d 888 (1985); *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974). *See also State v. Bowe*, 77 Hawai'i 51, 57, 881 P.2d 538, 543–44 (1994) (when the United States Supreme Court's interpretation of the United States Constitution does not adequately preserve the rights of the people, the Supreme Court of Hawai'i will recognize such rights under the state constitution).

### B.

*Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), also held that "[t]he failure of a trial court to ask a defendant represented by an attorney whether he [or she] has anything to say before sentence [was] imposed" was not constitutional error. Extrapolating, the United States Court of Appeals for the Ninth Circuit, in *Boardman v. Estelle*, 957 F.2d 1523, 1527 (9th Cir.1992), found that *Hill* "left open the question of whether a defendant who *asks* the court to speak has a Constitutionally guaranteed right to do so." (Emphasis in the original.) Answering that question, the court of appeals held that the denial of a defendant's specific request for allocution violated due process. However, little would be gained by applying such distinctions to a constitutional right of allocution. Because the constitutional right here is one afforded "pre-sentence," manifestly, the defendant must be given the opportunity to be heard before the court imposes sentence.

We know of no effective or adequate manner in which a defendant's right of presentence allocution may be constitutionally realized than to affirmatively require that the trial court make direct inquiry of the defendant's wish to address the court before sentence is imposed.[7] This limited burden on the trial court is outweighed by the beneficent policies served by the procedure.

---

5. Allocution is recognized in more than half of the American jurisdictions by statute, rules of court, and case law. *American Bar Association Standards Relating to Sentencing Alternatives and Procedures*, commentary to § 5.4 at 254–55 (1968). The right "also rises to a constitutional level." *Id.* at 254.

6. Article I, section 5 states:

   No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

   Haw. Const. art. I, § 5.

7. Constitutional considerations aside, we believe that compliance with HRS § 706–604(1), HRPP Rule 32(a), and *Schutter v. Soong*, 76 Hawai'i 187, 873 P.2d 66 (1994), overruling *State v. Medeiros*, 8 Haw.App. 39, 791 P.2d 730, *cert. denied*, 71 Haw. 669, 833 P.2d 901 (1990), would also obligate the sentencing court to make an affirmative inquiry.

Controversy concerning this right at the trial and appellate levels may be easily avoided.

> [T]o avoid litigation arising out of ambiguous records in order to determine whether the trial judge did address himself to the defendant personally, we think that the problem should be, as it readily can be, taken out of the realm of controversy. This is easily accomplished. Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.

*Green v. United States,* 365 U.S. 301, 305, 81 S.Ct. 653, 655–56, 5 L.Ed.2d 670, 674 (1961). The right is one easily administered by the trial court by the following inquiry: " 'Do you, ... [ (defendant's name) ], have anything to say before I pass sentence?' " *Id.* at 303, 81 S.Ct. at 655, 5 L.Ed.2d at 673.

Once defendants are afforded a "personal invitation to speak" under this procedure, no questions should arise in future cases as to silence, ambiguity, or waiver with respect to the right of allocution.[8] (Silence or ambiguity would not constitute a waiver of a constitutional right. *See State v. Hoey,* 77 Hawai'i 17, 881 P.2d 504 (1994) (ambiguous request for counsel during interrogation may be clarified but would not be a waiver until the defendant voluntarily, intelligently, and knowingly waives the presence of counsel)).

### C.

▓ The remedy for denial of Defendant's right of allocution is resentencing. *Schutter v. Soong,* 76 Hawai'i 187, 208, 873 P.2d 66, 85 (1994). *Accord United States v. Turner,* 741 F.2d 696 (5th Cir.1984); *People v. Borrego,* 774 P.2d 854 (Colo.1989); *State v. Goodrich,* 97 Idaho 472, 546 P.2d 1180 (1976). *See also State v. Friedman,* 431 S.W.2d 72 (Mo.1968) (it is well settled in all jurisdictions that the

remedy is resentencing and not retrial). For, if the right of allocution is violated, it cannot be known whether the defendant would have said anything that could have resulted in a different sentence. *United States v. Medrano,* 5 F.3d 1214 (9th Cir. 1993).

### D.

▓ We turn, next, to a determination of whether the right of allocution obtains in both misdemeanor cases and violation cases.

Some authorities hold "that in misdemeanor cases there is no need, in the absence of statute, of asking a defendant before sentence whether he has any legal cause to show why judgment should not be pronounced against him." Annotation, *Necessity and Sufficiency of Question to Defendant as to Whether He Has Anything to Say Why Sentence Should Not be Pronounced Against Him,* 96 A.L.R.2d 1292, 1300 (1964). HRS chapter 706, which is part of the Hawai'i Penal Code, is applicable here.

HRS § 706–600 (Supp.1992) states that "[n]o sentence shall be imposed otherwise than in accordance with this chapter [706] [ (Disposition of Convicted Defendants) ]." Chapter 706 controls the disposition of "all offenses—whether defined within or outside of the Penal Code." Commentary to HRS § 706–600 (1985). Thus, the offenses of driving with a revoked license and illegal turn, although defined outside of the Hawai'i Penal Code in HRS chapter 291C and chapter 291, would be covered by the provisions of HRS chapter 706. Those provisions, of course, include HRS § 706–604(1) which requires presentence allocution. Misdemeanors and violations, then, fall within the scope of HRS § 706–604(1).

Also, the HRPP "apply to all penal proceedings in all courts of the State of Hawaii [Hawai'i], except as provided in subsection (b) ..." HRPP Rule 54(a). The exceptions listed in HRPP Rule 54(b)[9] do not include

---

**8.** While it had been held by this court in *Medeiros* that the trial court did not have a duty under HRS § 706–604(1) or HRPP Rule 32(a) to affirmatively determine if the defendant wished to address the court, the import of *Schutter* is otherwise.

**9.** Section (b) states:

proceedings relating to misdemeanors or violations, so neither are excluded from the operation of the penal rules under HRPP Rule 54(a).

Penal means "containing a penalty, or relating to a penalty." *Black's Law Dictionary* 1132 (6th ed. 1990). "The word 'penal' is inherently a much broader term than 'criminal' since it pertains to any punishment or penalty and relates to acts which are not necessarily delineated as criminal." *Id.* Driving with a revoked license may be punished by imprisonment. HRS § 701–107(1) (Supp.1992); HRS § 701–107(3) (1985). Consequently, a misdemeanor sentencing hearing would fall within the definition of a penal proceeding.

The illegal turn is a traffic offense and is a violation which is not a crime. HRS § 701–107(5) (1985). This court has stated, however, that "although a violation does not constitute a crime, it constitutes a penal offense[.]" *State v. Simeona,* 10 Haw.App. 220, 231, 864 P.2d 1109, 1115 (1993).

Hence, the HRPP which pertain to "penal proceedings in all courts" would govern the imposition of sentences for driving with a revoked license and an illegal turn. Additionally, then, HRPP Rule 32(a) would also require that Defendant be afforded allocution in misdemeanor and violation cases.

■ Finally, of course, a due process right such as the right of presentence allocution may be applied in the context of misdemeanors and traffic violations. *See, e.g., Kernan v. Tanaka,* 75 Haw. 1, 856 P.2d 1207 (1933) (driver's license, once conferred, becomes a constitutionally protected property interest and procedures for administrative revocation for those charged with driving under the influence must satisfy due process).

Accordingly, we hold that Defendant did have the right of allocution before being sentenced for the misdemeanor offense of driving with a revoked license and for the viola-

tion charge of illegal turn. We consider, lastly, whether the trial court's violation of that right was reversible error.

### E.

Under HRPP Rule 52(a), "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Ordinarily, the denial of the right of allocution would constitute reversible error. "What effect the exercise of the right of allocution might have on the subjective process of sentencing can never be known with such certainty that a reviewing court can conclude there was no prejudice in its absence." *Commonwealth v. Thomas,* 520 Pa. 206, 208, 553 A.2d 918, 919 (1989).

■ On the illegal turn charge, the court had several alternative sentencing dispositions including community service in lieu of the fine, HRS § 706–605 (Supp.1992), and payment of the fine in installments. HRS § 706–642 (1985). Since a purpose of allocution is to allow the defendant to speak in mitigation of sentence, the denial, here, would be reversible error.

■ A more complex issue is presented on the driving with a revoked license charge. The State argues that because the court imposed the legally required minimum sentence, the sentence could not be mitigated by allocution and, therefore, the denial of Defendant's right of allocution was harmless. There is, undeniably, authority to that effect. *E.g., United States v. Carper,* 24 F.3d 1157 (9th Cir.1994) (harmless if sentence is as short as is allowed); *United States v. Mejia,* 953 F.2d 461 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992); *People v. Foy,* 124 Mich.App. 107, 333 N.W.2d 596 (1983) (in prior appeal, court had determined appropriate sentence). *Cf. State v. Shuler,* 162 Ariz. 19, 780 P.2d 1067 (1989) (must show prejudice). To determine whether the denial of the right of allocution is

(b) **Proceedings.** These rules shall not apply to extradition and rendition of fugitives; forfeiture of property for violation of law; the collection of fines and penalties; contempt proceedings which are treated by the court as petty misdemeanors; family court proceedings

under section 571–11 of Hawaii [Hawai'i] Revised Statutes; and statutory proceedings in which a specific procedure is provided for as part of the statute creating the offense.
HRPP Rule 54(b).

harmless error, we examine the purposes served by allocution in modern times.[10]

Allocution allows the defendant to speak in mitigation of sentence. Cohen, *Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay*, 47 Tex.L.Rev. 1, 9 (1968). *Accord Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961); A. Klein, *Alternative Sentencing: A Practitioner's Guide* § 2.09 at 46 (1988). It also "provides offenders the opportunity to contest any disputed factual bases for sentencing and [to] persuade the judge to choose a favored sentence alternative." A. Campbell, *Law of Sentencing* § 9:5 at 245 (2d ed. 1991) (footnotes omitted). Additionally, allocution provides a defendant the opportunity to meaningfully participate in the sentencing process and to show that he or she is a "complex individual" and "not merely an object to be acted upon[.]" Cohen, *supra*, at 11. *Accord State v. Carr*, 172 Conn. 458, 374 A.2d 1107 (1977).

But allocution today serves purposes beyond that of sentence mitigation.

For, even where mandatory sentences are meted out, a defendant's opportunity to speak may often be used to acknowledge wrongful conduct, the first step towards satisfying the sentencing objective of rehabilitation.[11] A defendant's public acknowledgment of wrongdoing may also have collateral benefits. We would not minimize the effect it may have in some cases of deterring others from similar conduct, and purging, to some extent, feelings of any felt need for retribution in a victim, a victim's family, or the community as a whole.

Aside from its rehabilitative potential, allocution has a therapeutic effect on the defendant. *People v. Shannon B.*, 22 Cal.App.4th 1235, 27 Cal.Rptr.2d 800 (1994); *Carr*; *People v. Foy*, 124 Mich.App. 107, 333 N.W.2d 596 (1983). Indeed, some courts maintain that "the right of allocution has survived more for its therapeutic effect on the defendant than its practical effect on the judge's determination." *United States v. Jackson*, 700 F.2d 181, 191 (5th Cir.1983) (internal quotation marks omitted). While we do not entirely agree with the contention, it has also been said that "[allocution's] major justification today is [its] therapeutic effect." *State v. Brockman*, 184 Neb. 435, 435, 168 N.W.2d 367, 368 (1969). But we do recognize that:

> Standing convicted of a crime, the defendant should be accorded the right to speak regardless of whether it will actually affect the sentence ultimately imposed. While any statement the defendant may make might be "meaningless" in terms of the sentence to be received, we cannot say that the individual defendant would regard his or her remarks as meaningless.

*People v. Smith*, 96 Mich.App. 346, 349, 292 N.W.2d 206, 207 (1980).

Finally, we regard allocution to be a significant aspect of the fair treatment which should be accorded a defendant in the sentencing process. The American Bar Association states that "the policies behind permitting the defendant to make a statement at sentencing have to do more with maximizing the perceived equity of the process than with detecting misinformation or obtaining a reliable impression of the defendant's character." *American Bar Association Standards for Criminal Justice*, commentary to Standard 18–6.4 at 18–459 (2d ed. 1979). We would disagree with the characterization that allocution is "perceived equity," however, because we believe the defendant's opportunity to speak on his disposition is, as a matter of fact, essential to fair treatment.

---

**10.** Allocution originated in English criminal law. It allowed the defendant who was not represented by counsel and unable to be a witness on his own behalf, his only opportunity to present matters of defense or mitigation. Annotation, *Necessity and Sufficiency of Question to Defendant as to Whether He Has Anything to Say Why Sentence Should Not be Pronounced Against Him*, 96 A.L.R.2d 1292, 1295 (1964).

**11.** HRS § 706–604(1), of course, does not deny persons subject to mandatory sentences the opportunity to address the court, but, as with all

Obviously, allocution will not play the same role in every case.[12] But that can hardly be a basis for justifying its denial as harmless. That traffic violations are involved here does not depreciate the principle. We are not prepared to say that in the numerous district court proceedings, like the one here, where our citizenry most often comes in contact with the judiciary, the impact of a sentence in the life of a defendant cannot be significant.

We disagree, therefore, with the authorities which hold that the denial of allocution constitutes harmless error in cases involving mandatory sentences and agree with those which hold, as we do here, that the denial of allocution, even where mandatory sentences must be imposed, is reversible error requiring resentencing. *E.g., State v. Herrera,* 102 N.M. 254, 694 P.2d 510 (1985). Moreover, reversal constitutes only a minimal intrusion in case dispositions, since unlike other reversible errors premised on HRPP Rule 52(a), reversal results only in resentencing and not retrial.

It would be difficult to identify a situation where the denial of allocution would be harmless in light of its purposes. Thus, we doubt that the denial of presentence allocution can ever be harmless error. But certainly the fact that a sentence may be a mandatory one, should not render the denial of the right harmless, in view of the substantial benefits otherwise accruing to the defendant in the exercise of that right.

The district court convictions entered on September 8, 1991 are affirmed. However, the sentences are vacated and the case is remanded for resentencing before another judge.[13]

---

other sentences, requires it be afforded the defendant.

**12.** Like other court proceedings, any time or content limitation by the sentencing court of the right of allocution would be reviewed on a case by case basis, taking into consideration the circumstances of each case and the soundness of the discretion exercised by the sentencing judge.

**13.** We do not question the impartiality of the district court judge who originally sentenced Defendant, but think it appropriate that Defendant be resentenced by another judge because the district court judge who originally sentenced Defendant has already made a sentencing determination. *Schutter v. Soong,* 76 Hawai'i 187, 208 n. 6, 873 P.2d 66, 87 n. 6 (Sup.1994).