953 P.2d 1347

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**David B. DAVIA, Defendant–Appellant.**

**No. 19961.**

Supreme Court of Hawai'i.

May 1, 1998.

Darcia Forester, Deputy Public Defender, on the briefs, for defendant-appellant David B. Davia.

Artemio C. Baxa, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawaiʻi.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

LEVINSON, Justice.

The defendant-appellant David B. Davia appeals from his conviction and sentence of one count of driving under the influence of intoxicating liquor in violation of Hawaiʻi Revised Statutes (HRS) § 291–4 (Supp.1996).[1] He argues, and the prosecution concedes,

---

1. HRS § 291–4 provides in relevant part:

**Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

(b) A person committing the offense of driving under the influence of intoxicating liquor shall be

that the district court erred by (1) failing to engage Davia in an on-the-record colloquy to establish that his plea of no contest was knowing and voluntary, and (2) failing to accord Davia his right of allocution prior to sentencing. Additionally, Davia asserts that the ninety-day suspension of his driver's license (3) was not authorized by HRS § 291–4 and (4) constituted cruel and unusual punishment in violation of the eighth amendment to the United States Constitution [2] and article I, section 12 of the Hawai'i Constitution (1978).[3]

We agree with the parties that the district court erred in failing to establish on the record that Davia's plea was knowing and voluntary; accordingly, we vacate Davia's conviction and sentence and remand either for a new change of plea hearing before a different judge or, at Davia's option, for trial. Although this issue is outcome-dispositive of the instant appeal, we briefly address Davia's remaining points of error in order to provide guidance to the district court and the parties on remand.

## I. BACKGROUND

The following facts were derived from the record and from the parties' offers of proof at trial.

On March 8, 1996, Davia was charged with one count of driving under the influence of intoxicating liquor, in violation of HRS § 291–4, and one count of inattention to driving, in violation of HRS § 291–12 (1993).[4] The charges arose out of an incident that occurred in the afternoon of January 14, 1996, at Welakahao Road in Kīhei, on the Island of Maui. Maui Police Department Officer Donald Nakooka was dispatched to "respond to a case where an individual had struck a vehicle." Upon arrival, Officer Nakooka was greeted by Davia, who admitted to him that he had struck a parked car. Officer Nakooka noticed several indications of intoxication in Davia, including an odor of alcohol, unsteadiness, redness in the eyes, and slurred speech. Officer Nakooka spoke to the complainant, who told him that she had heard the sounds of a crash while standing outside her home and that, when she looked up, she observed that Davia, who had been riding a bicycle, had crashed into her parked car.

Officer Nakooka administered a field sobriety test to Davia at the scene, which Davia failed. After his arrest, Davia submitted to an "intoxilyzer" breath test, which indicated that he was unlawfully intoxicated.

----

sentenced as follows without possibility of probation or suspension of sentence:
(1) For the first offense, or any offense not preceded within a five-year period by a conviction under this section, by:
(A) A fourteen-hour minimum alcohol abuse rehabilitation program including education and counseling, or other comparable program deemed appropriate by the court; and
(B) Ninety-day prompt suspension of license with absolute prohibition from operating a motor vehicle during suspension of license, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a motor vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in alcoholism treatment programs; and
(C) Any one or more of the following:
(i) Seventy-two hours of community service work;
(ii) Not less than forty-eight hours and not more than five days of imprisonment; or
(iii) A fine of not less than $150 but not more than $1,000.

.... 
(g) As used in this section the terms "driver", "driver's license", and "examiner of drivers", shall have the same meanings as provided in section 286–2 and the term "vehicle" shall have the same meaning as provided in section 291C–1.

2. The eighth amendment to the United States Constitution provides that "[c]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

3. Article I, section 12 of the Hawai'i Constitution provides in relevant part that "[c]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

4. HRS § 291–12 provides:

**Inattention to driving.** Whoever operates any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than six months, or both.

On May 1, 1996, Davia attempted to argue a motion to suppress evidence, but the motion was summarily denied because it had been untimely filed. The trial commenced that same morning. After several minutes of the prosecution's direct examination of Officer Nakooka, the district court called a recess and asked to speak to counsel off the record. After the recess, the following exchange transpired:

> THE COURT: I believe you have reached an agreement. And as I understand it, prosecutor, you will dismiss the inattention and there will be a no contest plea to the DUI; however, the defendant will reserve the right to appeal my ruling on the suppression motion.
>
> [DAVIA'S COUNSEL]: That is correct.
>
> THE COURT: ... I'm going to allow that. And the section of law you cited me again is?
>
> [DAVIA'S COUNSEL]: Is Rule 11[ (a)(]2[) ] of the Hawaii Rules of Penal Procedure.
>
> THE COURT: 11[ (a)(]2[) ]. Very good. And so you'll draft an order ... and you'll have the prosecutor approve it as to form and then I'll sign it.
>
> [DAVIA'S COUNSEL]: Okay.
>
> THE COURT: And that being said, we'll enter a plea of no contest on—let me get the calendar.
>
> [THE PROSECUTOR]: It's TR6, your Honor.
>
> THE COURT: TR—we'll dismiss 5. We'll enter a plea of no contest on 6. I'll impose the minimum sentence that the law allows which is a fine of $250.00. 100 of the $250 to the DET. I'll require the AARP and the substance abuse assessment. I'll suspend your driver's license for 90 days. During the first 30 of those 90 you cannot drive. The suspension is absolute during the latter 60. I'll allow you to drive to and from work and in conjunction with your work. We'll have a return day for the AARP and the·substance abuse.

Although further discussion ensued on the record—both parties making their offers of proof with respect to the facts of the case and the motion to suppress—the district court at no time addressed Davia personally. The district court's judgment convicting Davia of driving under the influence of intoxicating liquor and imposing the sentence described above was filed on May 10, 1996. Davia timely appealed.

## II. STANDARDS OF REVIEW

### A. Plain Error

■ "We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen,* 86 Hawaiʻi 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawaiʻi Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

### B. Acceptance Of A No Contest Plea

■ "The [trial] court is vested with wide discretion to accept or refuse a nolo contendere plea." *State v. Medeiros,* 8 Haw.App. 39, 43, 791 P.2d 730, 733, *cert. denied,* 71 Haw. 669, 833 P.2d 901 (1990) (emphasis deleted), and the acceptance or refusal of a no contest plea is therefore reviewed for abuse of that discretion.... "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant. [*State v.]* Gomes, 79 Hawaiʻi [32,] 36, 897 P.2d [959,] 963 [ (1995) ] (quoting [*State v.] Adams,* 76 Hawaiʻi [408,] 411, 879 P.2d [513,] 516 [ (1994) ] ) (citation omitted) (internal quotation marks omitted).

*State v. Merino,* 81 Hawaiʻi 198, 211, 915 P.2d 672, 685 (1996) (footnote omitted).

### C. Sentencing

■ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Valera,* 74 Haw. 424,

439, 848 P.2d 376, 383, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993). *State v. Cornelio,* 84. Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) (quoting *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995)).

### D. *Interpretation Of A Statute*

■ "[T]he interpretation of a statute ... is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). *Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One ave-

nue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Cullen,* 86 Hawai'i at 8–9, 946 P.2d at 963–64 (some brackets in original and some added)).

### III. *DISCUSSION*

A. *The District Court's Failure To Establish On The Record That Davia's No Contest Plea Was Knowing And Voluntary Constituted An Abuse of Discretion Amounting to Plain Error.*

■ HRPP Rule 11 (1996) provides in relevant part:

(c) **Advice to the defendant.** *The court shall not accept a plea of* guilty or *nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:*

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo

contendere he waives the right to trial; and

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(d) **Insuring that the plea is voluntary.** *The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary* and not the result of force or threats or of promises apart from the plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

(Emphasis added.)

... This court has stressed that it is incumbent on all trial judges to strictly conform to the guidelines provided in HRPP Rule 11. [*State v.] Vaitogi*, 59 Haw. 592, 585 P.2d 1259 (1978). This does not mean that trial judges must resort to a ritualistic litany in determining the voluntariness of a nolo contendere plea. *Id.* at 601, 585 P.2d at 1265; *State v. Dicks*, 57 Haw. 46, 51, 549 P.2d 727, 731 (1976). However, we cannot emphasize enough that all procedural components of HRPP Rule 11 should actually be complied with by the trial judges.

*State v. Cornelio*, 68 Haw. 644, 647, 727 P.2d 1125, 1127 (1986). In *State v. Williams*, 68 Haw. 498, 499, 720 P.2d 1010, 1012 (1986), this court held that the trial court's failure to comply with HRPP Rule 11(c) and (d) constituted plain error.

The prosecution concedes that the district court erred by failing to comply with HRPP Rule 11 and, "[c]onsequently, ... requests that this Court vacate [Davia's] conviction and remand the case to a different trial judge for a new change of plea hearing." Based on the foregoing authority, we agree with the parties that the district court's failure to inquire on the record whether Davia's no contest plea was knowing and voluntary was an abuse of discretion and that we may notice this as plain error.

B. *The District Court Also Erred By Failing To Accord Davia His Right Of Pre–Sentence Allocution.*

 The prosecution also concedes that the district court erred by failing to accord Davia his right of allocution prior to sentencing. HRS § 706–604(1) (1993) provides that, "[b]efore imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition." Similarly, HRPP Rule 32(a) provides in relevant part that, "[b]efore suspending or imposing sentence, *the court shall address the defendant personally and afford a fair opportunity to the defendant* and defendant's counsel, if any, *to make a statement and present any information in mitigation of punishment.*" (Emphases added.) Moreover, pre-sentence allocution has been recognized as a due process right under the Hawai'i Constitution. *See State v. Chow*, 77 Hawai'i 241, 246–47, 883 P.2d 663, 668–69 (App.1994) (citing *Schutter v. Soong*, 76 Hawai'i 187, 208, 873 P.2d 66, 87 (1994)).

Therefore, if Davia is again convicted on remand, the district court should insure that he is afforded an opportunity to speak prior to sentencing.

C. *HRS § 291–4(b) Authorizes The Suspension Of A Driver's License As A Sanction For Driving A Bicycle While Intoxicated.*

 Davia and the prosecution finally part ways with respect to his position concerning the construction and validity of HRS § 291–4. Citing this court's oft-repeated sentiment that a "court is not obligated to construe statutes literally if to do so would bring about absurd results," *Keaulii v. Simpson*, 74 Haw. 417, 421, 847 P.2d 663, 666 (1993), Davia argues that HRS § 291–4 cannot reasonably be interpreted to authorize the suspension of his driver's license as part of a sentence for driving a bicycle while intoxicated.

HRS § 291–4(a) (1996) provides that a person commits the offense of driving under the influence of intoxicating liquor if he or she

"operates or assumes actual physical control of *any vehicle*" (1) while that person's "normal mental faculties" are sufficiently impaired by intoxicating liquor to impede the "ability to care for oneself and guard against casualty," HRS § 291–4(a)(1), or (2) while that person has ".08 or more grams of alcohol per one hundred millileters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath." HRS § 291–4(a)(2) (emphasis added). Prior to 1986, HRS § 291–4(e) (1985) provided that, "[a]s used in this section the terms "driver," "driver's license," "examiner of drivers," and *"vehicle"* shall have the same meanings as provided in section 286–2." (Emphasis added.) HRS § 286–2 (1985) provided (and still provides, *see* HRS § 286–2 (Supp.1997)) in relevant part that, for purposes of the highway safety code, " '[v]ehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, *but excludes devices moved by human power* or devices used exclusively upon stationary rails or tracks and mopeds." (Emphasis added.) Thus, prior to 1986, a person riding a bicycle while intoxicated could not violate HRS § 291–4.

In 1986, the legislature amended HRS § 291–4(e)[5] as follows: "As used in this section the terms 'driver,' 'driver's license,' *and* 'examiner of drivers,' [and "vehicle"] shall have the same meanings as provided in section 286–2[.]; *and the term 'vehicle' shall have the same meaning as provided in section 291C–1.*" 1986 Haw. Sess. L. Act 221, § 3 at 387 (brackets and emphasis in original, indicating omitted and added text, respectively). HRS § 291C–1 (1985) provided (and still provides, *see* HRS § 291C–1 (1997)) that, for purposes of the statewide traffic code, " '[v]ehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a roadway or highway, *including* mopeds and *bicycles*, but excluding toy bicycles, devices other than bicycles moved by human power, and devices used exclusively upon stationary rails or tracks." (Emphasis added.) The legislative history of Act 221 is silent regarding the purpose of this change. However, because the only substantive differences between HRS §§ 286–2 and 291C–1 are the inclusion of devices operated on a "roadway" and "bicycles" in the latter's definition of "vehicle," we must infer that the change reflected a deliberate legislative intent to place bicyclists within the reach of HRS § 291–4.

Like HRS § 286–2, the definition of "vehicle" set forth in HRS § 291C–1 originally excluded bicycles. Bicycles were added to that statutory definition of "vehicle" in 1984 by Act 273. *See* 1984 Haw. Sess. L. Act 273, § 3 at 629. Act 273 was designed to address the

> problem [of] the treatment of bicycles as children's toys somewhere between a vehicle and a pedestrian. With the increased use of bicycles as a basic mode of transportation as well as for recreation, there is a critical public safety need to address this problem. Therefore, the purpose of this Act is to amend those sections of the Hawaii Revised Statutes relating to bicycles to conform with the uniform vehicle code, where applicable, and to provide for more progressive, safer bicycle laws.

1984 Haw. Sess. L. Act 273, § 1 at 624. The legislative history makes clear that "the basic thrust of the bill [was] to treat bicycles as vehicles for purposes of the Statewide Traffic Code." Hse. Stand. Comm. Rep. No. 208–84, in 1984 House Journal, at 902. Committees in both the House and the Senate stated that "it is appropriate that bicyclists be accorded generally the same rights and be subject to generally the same duties as the drivers of 'vehicles', as they are now defined in the Statewide Traffic Code." *Id.;* Hse. Stand Comm. Rep. No. 449–84, in 1984 House Journal, at 1053; Sen. Stand. Comm. Rep. No. 557–84, in 1984 Senate Journal, at 1277. The subsequent amendment of HRS § 291–4 to include bicyclists within the reach of the drunk driving statute can most reasonably be interpreted as yet another step toward imposing on bicyclists "the same duties as the drivers of 'vehicles.' "

---

5. In subsequent amendments, this provision was redenominated HRS § 291–4(g). *See supra* note

1.

Notwithstanding this "literal" interpretation of the statutes, Davia argues that the result is absurd. He points out that bicycling is an unlicensed activity and that suspending a bicyclist's driver's license pursuant to HRS § 291–4(b)(1)(B), *see supra* note 1, can have no effect on the bicyclist's subsequent operation of his bicycle. Davia finds support for this argument in an opinion of a New Jersey court, *State v. Tehan*, 190 N.J.Super. 348, 463 A.2d 403 (1982). The *Tehan* court held that New Jersey's suspension of license penalty for drunk driving

> by its nature can have no application to violations involving the operation of bicycles.... Since no licensing system exists for bicycles, and no statutory provision indicates that the right to use the roads may be denied a bicyclist, there simply is no way to prevent a drunken bicyclist from repeating his offense.
>
> The punishment must fit the crime. The revocation of a driver's license or of the right to obtain such a license does not fit the offense of drunken operation of a bicycle.

*Tehan*, 463 A.2d at 405. Accordingly, the *Tehan* court struck down Tehan's license suspension. *Id.*

However, the "*Tehan* argument" assumes that the legislative purpose underlying HRS § 291–4(b)(1)(B)'s ninety-day suspension of license is exclusively *remedial* (*i.e.,* to keep the dangerous driver off the streets for that period). The legislative history of HRS § 291–4 proves otherwise. Thirty-day license suspensions for first-time offenders (or those not offending within five years of another drunk driving conviction) were first introduced into the statute by a 1982 amendment, along with alcohol rehabilitation and community service sentencing components. *See* 1982 Haw. Sess. L. Act 251, § 1 at 472–73. A Senate Transportation Committee report announced that "[t]he purpose of this bill is to strengthen the *penalties* for anyone convicted of driving a vehicle while under the influence of intoxicating liquor." Sen. Stand. Com. Rep. No. 176–82, in 1982 Senate Journal, at 1011 (emphasis added). The report

decried the growth in traffic fatalities associated with intoxicated drivers and predicted that the problem would "continue to increase unless and until this Legislature provides *meaningful sanctions that will deter drunken driving.*" *Id.* (emphasis added). The committee found that

> penalties which have proved effective elsewhere share a common philosophy: that driving is not a right, but a revocable privilege. Laws in other jurisdictions indicate a common belief that first-offense convictions for drunk driving should be *severe enough to make a lasting impression,* and inescapable so that *these heavy punishments* cannot be avoided once the driver is convicted.

*Id.* (emphases added).

In 1983, the legislature promulgated another amendment to HRS § 291–4 that, *inter alia,* raised the time of license suspension for first-time offenders (or those not occurring within five years of a previous drunk driving conviction) to ninety days. *See* 1983 Haw. Sess. L. Act 117, § 1 at 208. A joint report of the Senate Transportation and Judiciary Committees asserted that "[s]tronger sanctions, as proposed by this measure, would be an *effective deterrent to drunk driving.*" Sen. Stand. Comm. Rep. No. 999, in 1983 Senate Journal, at 1478 (emphasis added). The report also stated that "[i]t is the Committee's intent that suspension of license shall mean an absolute prohibition from driving during the period of suspension. To do otherwise would decrease the *impact and significance of the sanction.*" *Id.* (emphasis added).

■ The highlighted language in the foregoing committee reports demonstrates that, while the provision for license suspension contained in HRS § 291–4 may have a remedial purpose, it is also intended to act as a deterrent. Therefore, the mere fact that the sanction does not prevent Davia from operating his bicycle does not detract from the intended deterrent effect that the sanction could have on him and others.[6]

---

6. We acknowledge that this court came to the opposite conclusion with respect to *administra-*

*tive* suspensions of licenses pursuant to the administrative revocation program, HRS §§ 286–

Accordingly, we hold that the application of HRS § 291–4 to Davia was not "absurd" and that the "literal" meaning of the statutory language should be followed.

D. *The Suspension Of Davia's Driver's License Did Not Constitute Cruel And Unusual Punishment.*

■■■■ Davia further argues that the ninety-day suspension of his driver's license was cruel and unusual punishment prohibited by the eighth amendment to the United States Constitution and article I, section 12 of the Hawai'i Constitution.

"The standard by which punishment is to be judged under the 'cruel and unusual' punishment provisions of both the United States and Hawaii Constitutions is whether[,] in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community."

*State v. Kumukau,* 71 Haw. 218, 226–27, 787 P.2d 682, 687 (1990) (quoting *State v. Freitas,* 61 Haw., 262, 267–68, 602 P.2d 914, 920 (1979)). "The question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual." *Freitas,* 61 Haw. at 267, 602 P.2d at 920. In *Freitas,* this court borrowed a three-pronged test, from *In re Lynch,* 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921 (1973), as an interpretive guide for the analysis of whether a punishment is "clearly and manifestly" cruel and unusual. *Freitas,* 61 Haw. at 268, 602 P.2d at 920. The *Lynch* test directs the court to consider:

> (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions.

*Id.* In using this test, "the nature of the offense and the danger the offender poses to society are the key factors in this determination." *Id.*

With regard to the first prong of the *Freitas/Lynch* test (*i.e.,* the "key factors"), Davia argues that a drunken bicyclist poses much less of a danger to society than does a drunk-

---

251 through 286–266 (1993). *See State v. Higa,* 79 Hawai'i 1, 897 P.2d 928 (1995) (administrative revocation of licenses is purely remedial); *Kernan v. Tanaka,* 75 Haw. 1, 29, 856 P.2d 1207, 1221, (same), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). While, at first blush, today's holding may seem inconsistent with this precedent, we note that "whether a sanction constitutes punishment is not determined from the defendant's perspective.... Rather, we must examine the purpose actually served by the sanction in question." *Higa,* 79 Hawai'i at 6, 897 P.2d at 933. In *Higa,* this court pointed out that the legislative history of the administrative revocation statutes indicated that the legislature contemplated suspension in that context as nonpunitive, stating that

> the main benefit of administrative revocation is that it allows the State to remove a drunk driver's license *before the culmination of a lengthy prosecution under the criminal statute.* Currently a person charged with driving under the influence must be allowed to continue driving until he or she is found guilty in a court of law. This process takes an average of seven to eight months in Hawaii, and even longer, and

> while this process is going on, the dangerous driver, who quite likely is an inveterate repeat offender, remains on the road.

*Id.* (quoting Hsc. Conf. Comm. Rep. No. 137, in 1990 House Journal, at 824–25; Sen. Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 825) (emphasis added). In contrast, the legislative history of HRS § 291–4, quoted *supra,* indicates that, in the post-conviction context, the legislature viewed suspension of licensure as a deterrent and punitive sanction.

That the same type of sanction may serve different purposes in different contexts may be seen by analogy to the sanction of restitution. *See* HRS § 706–605(1)(d) (1997). Although the immediate impact upon a defendant of the sanction of restitution is the same as that of the sanction of a fine (*i.e.,* he or she is required to pay money as a result of conviction), each sanction has a distinct purpose; restitution is meant to have a remedial effect on the defendant, whereas fines are meant to have a retributive and deterrent effect. *See Gaylord,* 78 Hawai'i at 152–54, 890 P.2d at 1192–94.

Accordingly, *Higa* and *Kernan* are distinguishable from the case at bar.

en motorist: "Unlike human powered bicycles, motorized vehicles use high powered engines to propel them. Human powered bicycles cannot reach the high levels of speed that motorized vehicles can. Bicycles weigh a fraction of what a motorized vehicle does." As the *Tehan* court itself pointed out, however, "the drunken operator of a bicycle may create situations endangering both himself and others on the roads. He might, for example, swerve into traffic, cross the line into oncoming traffic, or fall in the path of traffic." *Tehan*, 463 A.2d at 405. Although it is intuitive that drunken operators of automobiles are, on the whole, likely to cause more extensive damage and casualty than drunken bicyclists, without a greater showing of proof, this court cannot determine that the disparity of risk is so great as to render the legislature's sentencing scheme cruel and unusual.

With regard to the second prong of the *Freitas/Lynch* test, the prosecution observes that a person convicted of reckless driving of a vehicle or riding of animals in violation of HRS § 291–2 (1993) [7] faces a penalty of up to one year in prison and/or a fine of up to $1,000. We note also that, had Davia been convicted as charged of inattention to driving in violation of HRS § 291–12 (1993), he would have faced a penalty of up to six months in jail and/or a fine of up to $500. In comparison, HRS § 291–4(b) provides that a first time offender (or one offending more than five years after a previous offense) shall be sentenced to (1) attendance of a fourteen-hour alcohol abuse rehabilitation program, HRS § 291–4(b)(1)(A), (2) suspension of driver's license for ninety days, HRS § 291–4(b)(1)(B), and (3) one or more of the following sanctions: (a) seventy-two hours of community service work, (b) no less than forty-eight hours but no more than five days of incarceration, or (c) a fine of no less than $150 but no more than $1,000. HRS § 291–4(b)(1)(C). Compared with the possibility of incarceration for six months or a year and fines of up to $500 or $1,000, neither the penalties prescribed by § 291–4(b) in general nor the suspension of Davia's license in particular seem disproportionately onerous.

Finally, with regard to the third prong of the *Freitas/Lynch* test, our research reveals that Ohio and Florida also apply their drunk driving statutes to intoxicated bicyclists. *See State v. Howard*, 510 So.2d 612 (Fl.Ct.App. 1987), *review denied*, 520 So.2d 584 (Fla. 1988); *State v. Hilderbrand*, 40 Ohio App.3d 42, 531 N.E.2d 775 (1987). Ohio Revised Code § 4511.19 provides, *inter alia*, that an offender who has not been convicted within five years of the offense shall have his or her driver's license suspended "for not less than sixty days nor more than three years." *See Hilderbrand*, 531 N.E.2d at 777 (emphasis added). For most first-time offenders, Florida Statutes Annotated § 316.193 (1997) provides for a penalty of (1) a fine of not less than $250 nor more than $500, (2) imprisonment for up to six months, (3) attendance in a substance abuse treatment course—with suspension of driving privileges if the offender fails to complete the course, (4) probation for up to one year, including, as a condition, a minimum of fifty hours of community service, and (5) impoundment or immobilization of the offending vehicle for ten days. Greater penalties are imposed on first-time offenders who (1) actually cause property damage or injury or (2) have blood-alcohol or breath-alcohol levels of greater than .20 grams per 100 milliliters of blood or 210 liters of breath, respectively. By comparison, HRS § 291–4(b) is not draconian in its sanctions.

In our view, and on balance, HRS § 291–4(b) is not "clearly and manifestly" cruel and unusual as applied to bicyclists; we therefore defer to the legislature's judgment as to the appropriate penalty for this offense. That being the case, we hold that HRS § 291–4(b) does not offend the eighth amendment to the United States Constitution or article I, section 12 of the Hawai'i Constitution.

---

7. HRS § 291–2 provides:

**Reckless driving of vehicle or riding of animals; penalty.** Whoever operates any vehicle or rides any animal in disregard of the safety of persons or property is guilty of reckless driving of vehicle or reckless riding of an animal, as appropriate, and shall be fined not more than $1,000 or imprisoned not more than one year or both.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate Davia's conviction of and sentence for driving under the influence of intoxicating liquor and remand either for a new change of plea hearing before a different judge or, at Davia's option, for trial.