Concurring and Dissenting Opinion by
NAKAYAMA, J.
in which Circuit Judge OCHIAI joins.
I concur with the Majority insofar as Phua’s waiver of his right to counsel prior to sentencing was not knowing and intelligent. The dispositive factor, in my view, is that the district court failed to advise Phua of the range of punishments that he then faced. This information is an irreducible minimum for a valid waiver during sentencing and it must appear on the record. I disagree with the Majority’s conclusion that the district court failed to sufficiently inquire into Phua’s background or that it failed to sufficiently inform Phua of his right to counsel. I would also hold that Phua’s right to allocution was not violated.
I. DISCUSSION
A. Right to Counsel
The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to counsel at all “critical stages” of the criminal process. See Iowa v. Tovar, 541 U.S. 77, 80, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); State v. Dicks, 57 Haw. 46, 549 P.2d 727 (1976). “Article I, section 14 of the Hawaii State Constitution bestows the same guarantee.” State v. Dickson, 4 Haw.App. 614, 618, 673 P.2d 1036, 1041 (1983). “Since the right to counsel is fundamental in our judicial system, where a defendant elects to proceed pro se, the record must indicate that he was offered counsel but that he voluntarily, knowingly, and intelligently rejected the offer and waived that right.” Id. at 619, 673 P.2d at 1041.
“The trial court is initially charged with the function of assuring that the defendant’s waiver of counsel is made knowingly and intelligently and that the record is complete so as to reflect that waiver.” Id. at 619, 673 P.2d at 1041. To establish a knowing and intelligent waiver, the trial court must first inform the defendant that he or she in fact has a right to counsel. Id. at 620, 673 P.2d at 1041; see also Tovar, 541 U.S. at 81, 124 S.Ct. 1379. Once the defendant has been made aware of his or her right to counsel, the trial court must apprise itself of the defendant’s background and experience, and with that experience in mind, ensure that the defendant understands the dangers and disadvantages of self-representation. See Dicks, 57 Haw. at 48, 549 P.2d at 730-31; Tovar, 541 U.S. at 89, 124 S.Ct. 1379.
1. Informing the Defendant of the Right to Counsel
As stated above, to knowingly and intelligently waive the right to counsel, the defendant must be aware that he or she has such a right in the first place. The burden is on the trial court to inform the defendant of that right. See Dickson, 4 Haw.App. at 619, 673 P.2d at 1041. The Supreme Court has explained that to meet this initial threshold, “the warnings required by Miranda ... adequately inform[ ] the defendant ... of his [or her] Sixth Amendment right to counsel.” Tovar, 541 U.S. at 89, 124 S.Ct. 1379. Thus, to adequately inform an individual that he or she may be entitled to court-appointed counsel, “it is necessary to warn [the individual] not only that he [or she] has the right to consult with an attorney, but also that if he [or she] is indigent a lawyer will be appointed to represent him [or her].” Miranda v. Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Here, the district court adequately informed Phua that he had the right to court-appointed counsel when it stated: “Do you understand that you’re entitled to have an attorney represent you and if you cannot afford one, the Court can appoint one for you?” Although phrased as a question, this warning tracks the language of Miranda, and therefore conforms to the requirements of the state and federal constitutions.
The Majority suggests that the following portion of the waiver colloquy failed to sufficiently inform Phua that he had a right to counsel:
THE COURT: You want to give up your right to an attorney for this hearing today?
MR. PHUA: Yes.
*519 THE COURT: Okay. Do you understand that you’re entitled to have an attorney represent you and if you cannot afford one, the Court can appoint one for you?
[[Image here]]
MR. PHUA: No, I was not aware of that but—
THE COURT: Do you still wish to proceed without an attorney?
MR. PHUA: Yes.
The Majority states: “We find that Phua’s response that he was not aware of the right to a court-appointed attorney required further explanation and inquiry.” But the Majority does not specify what further inquiry is required by the constitution, nor does it explain its unprecedented view that a Miranda warning fails to sufficiently advise a defendant that, as a threshold matter, he or she may be entitled to court-appointed counsel.[1]
Furthermore, the implication that Phua did not understand that he had the right to counsel is incorrect. The waiver colloquy shows that Phua was twice informed that he had a “right to an attorney,” and that he was specifically informed that the court could appoint an attorney to represent him if he were indigent. Phua’s response indicates that he understood the district court’s advisement. He stated: “I was not aware of that but....” In other words, Phua became aware of his right to counsel during the waiver colloquy, and that is the essential protection that the constitution requires. The district court’s response—“Do you still wish to proceed without an attorney?”—was constitutionally appropriate. In addition, the district court proceeded to advise Phua of some of the dangers of proceeding without counsel, which further emphasized the existence of the right in the first instance. Accordingly, I would hold that the district court met its initial burden to inform the defendant that he had a right to counsel.
2. Inquiry Into the Defendant’s Background
A trial court’s inquiry into the defendant’s background is an important step that informs the degree to which the court must explain the dangers and disadvantages of self-representation to the defendant. See Dicks, 57 Haw. at 48, 549 P.2d at 729-30. “Among the probative factors bearing on the question are the age, education, and mental capacity of the defendant, his background and experience, and his conduct at the time of the alleged waiver.” Id. Although this inquiry should occur during the waiver colloquy and appear on the record, Dickson, 4 Haw.App. at 619, 673 P.2d at 1041, it may appear from “the record as a whole” that the trial judge possessed the requisite background information to engage in a fully informative waiver colloquy. Dicks, 57 Haw. at 49, 549 P.2d at 730. In addition, because “the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances,” United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), a defendant’s otherwise knowing and intelligent waiver cannot be rendered unknowing or unintelligent based on the depth of the trial court’s background inquiry.
Courts of review must also be mindful of the “stage of the proceeding” when evaluating a waiver colloquy. Tovar, 541 U.S. at 88, 124 S.Ct. 1379. “[T]he inquiry at sentencing need only be tailored to that proceeding.” United States v. Salemo, 61 F.3d 214, 219 (3d Cir.1995). Due to the fact that sentencing occurs at the end of criminal proceedings, the trial court’s background inquiry “need not be as exhaustive and searching as a similar inquiry before the conclusion of trial.” Id. In many cases, the sentencing judge will have already reviewed an extensive presentence diagnosis and report and presided over the defendant’s criminal trial and/or other relevant proceedings.
*520 In this case, the district court possessed the requisite background information to engage in a fully informative waiver colloquy. During the colloquy itself, the court established that Phua was thirty-one years old and that he had a high school education. The district court also heard testimony regarding Phua’s background on July 1, 2011, in conjunction with Phua’s motion to continue trial. Phua’s former co-worker, Louanne Ondo, testified that Phua was employed at Walmart in a stocking and customer service capacity, and that “he spoke English to his co-workers, and ... to customers” without impediment. Officer Henry Ivy, the police officer who had interviewed Phua following his altercation with the complaining witness, testified that he had taken a statement from Phua in English and advised Phua of his rights in English. Officer Ivy testified that Phua did not exhibit any difficulty with English. The district court credited all of this testimony on the record. The district court also heard testimony from Phua’s mother, who explained that Phua had grown up in Singapore, that he had been living in the United States for the past six years, and that he straggled in school because he “has a very, very heavy dyslexia.” In addition to this testimony, the district court judge had firsthand knowledge of Phua’s experience with the judicial system because the judge had presided over Phua’s criminal trial and over two civil cases where Phua appeared pro se.[2]
Reviewing the record as a whole, the district court was aware of the essential background information required to conduct a defendant-specific waiver colloquy. The district court had knowledge of Phua’s “age, education, and mental capacity ..., his background and experience, and his conduct at the time of the alleged waiver.” Dicks, 57 Haw. at 48, 549 P.2d at 729-30. The district court also had extensive knowledge of Phua’s language capability and his prior civil and criminal experience with the judicial system. Accordingly, I would hold that the district court’s inquiry into Phua’s background comported with the requirements of the state and federal constitutions. Although it would have been ideal for the district court to reestablish all of this information on the record during the waiver colloquy, the constitution does not require it.
In reaching a contrary conclusion, the Majority has asserted that the district court’s inquiry “was limited” and that “there was other information before the court that suggested a further inquiry into Phua’s background was necessary.” Specifically, the Majority points to the testimony that the district court received on July 1, 2011:
Phua’s mother testified at trial that he was considered a “special education” student, he did not pass any elementary grade levels after the first grade, and he repeated the sixth grade three times. The court’s inquiry did not address these matters and further inquiry as to where Phua was educated and whether he received a high school diploma may have benefited the court’s analysis.
It is illogical to suggest that this July testimony, which was presented directly to the district court judge who presided over sentencing, is evidence that the district court was unaware of the defendant’s educational background.[3]
The Majority also notes that the district “court did not inquire into Phua’s English language skills even though the court was on notice that English was Phua’s second language.” However, the record very clearly shows that the district court was aware of Phua’s language capabilities. The district court received substantial testimony concerning Phua’s language capacity when it heard and denied Phua’s motion to continue trial. The court explained its denial of Phua’s motion as follows:
So the Court will deny the motion to continue. The Court does have sufficient information to show that the defendant has some knowledge of English and is reasonably able to converse in English, and this is supported by the testimony of the wit *521 nesses indicating that ... [t]he defendant was employed at Walmart, and he spoke English to his co-workers, and he spoke English to customers, and he was able to perform his duties as a clerk. Furthermore, he was able to converse with Officer Ivy and was able to determine whether or not he wished to give a statement and did not indicate any lack of understanding of the information that Officer Ivy gave to him. While he might prefer to have an interpreter speaking and interpreting from English into Mandarin, it’s not necessary in this situation.
Phua did not challenge the district court’s denial of his motion before the ICA or before this court. In addition, the district court presided over the entirety of Phua’s criminal trial, including periods where Phua was provided with a Mandarin interpreter, as well as two civil trials involving complex land disputes where Phua appeared pro se. In sum, there is extensive evidence in the record that the district court was fully apprised of Phua’s language capability.
Finally, Phua has never argued that the district court failed to apprise itself of his language capability. Phua has also never asserted that a language barrier prevented him from understanding the district court’s waiver colloquy. And based on an independent review of the sentencing proceedings, there is no evidence of a language bander between Phua and the district court. In fact, the district court had previously issued an unchallenged ruling that Phua did not need an interpreter. Thus, the Majority’s sua sponte assertion of a language barrier is beyond the proper scope of appellate review in this case.
3. Informing the Defendant of the Dangers and Disadvantages of Self-Representation
“[Bjefore a defendant may be allowed to proceed pro se, he [or she] must be warned specifically of the hazards ahead.” Tovar, 541 U.S. at 88-89, 124 S.Ct. 1379.
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that “he knows what he is doing and his choice is made with eyes open.”
Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). “[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it.” Ruiz, 536 U.S. at 629, 122 S.Ct. 2450 (emphasis in original). “If [the defendant] nonetheless lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State’s showing that the information it provided to him satisfied the constitutional minimum.” Patterson v. Illinois, 487 U.S. 285, 294, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (internal quotation marks and citation omitted).
The Supreme Court has endorsed a “pragmatic approach to the waiver question,” that asks “what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage,” to determine “the type of warnings and procedures that should be required before a waiver of that right will be recognized.” Patterson, 487 U.S. at 298, 108 S.Ct. 2389. At one end of the spectrum, the Supreme Court has “imposed the most rigorous restrictions on the information that must be conveyed to a defendant” to effectuate a valid waiver at trial. Id. Accordingly, the court must make the defendant “aware of the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter.”[4] Dickson, 4 Haw.App. at *522 620, 673 P.2d at 1041 (internal citations omitted). However, “[t]he trial judge is not required to give the defendant a short course in criminal law and procedure,” because a defendant's technical legal knowledge is not relevant to an assessment of the knowing exercise of the right to self-representation. Id.
At the other end of the spectrum, less rigorous warnings are required pretrial, because “the role of counsel is relatively simple and limited,” and the full dangers and disadvantages of self-representation “are less substantial and more obvious to an accused than they are at trial.” Patterson, 487 U.S. at 300, 108 S.Ct. 2389. Thus, the Supreme Court has held that Miranda warnings sufficiently apprise the defendant of the dangers and disadvantageous of waiving the right to counsel during post-indictment questioning. Id.
The courts of this state have not expressly dictated the information that the trial court must impart to a defendant to effectuate a valid waiver at sentencing. However, several jurisdictions have concluded that the waiver colloquy at sentencing “need not be as exhaustive and searching as a similar inquiry before the conclusion of trial.” United States v. Salemo, 61 F.3d 214, 219 (3d Cir.1995); see also United States v. Day, 998 F.2d 622, 626 (8th Cir.1993); Lopez v. Thompson, 202 F.3d 1110, 1120 (9th Cir.2000) (Wallace, J., concurring). “Sentencing hearings demand much less specialized knowledge than trials,” and the disadvantages of self-representation are less substantial and more obvious. Day, 998 F.2d at 626; see also Salemo, 61 F.3d at 219.
Although sentencing may require a less stringent waiver colloquy, it would be illogical to suggest that a trial court could forego warning the defendant of the range of allowable punishments at the very stage of proceedings where the defendant’s punishment will be decided. A defendant who is not aware of the range of allowable punishments at sentencing may fail to appreciate the gravity of his or her decision to forego the assistance of counsel. Therefore, the trial court must impart this information to the defendant on the record to effectuate a valid waiver.
In this case, Phua’s waiver of his right to counsel was not knowing and intelligent. During the waiver colloquy, the district court informed Phua of the dangers and disadvantages of self-representation as follows:
THE COURT: Now, an attorney can provide you with information and advice, can represent you at all stages of these proceedings, and can speak for you in court. Do you understand?
MR. PHUA: Yes.
THE COURT: And if you represent yourself, you will be opposed by a prosecuting attorney who is more experienced at trial, and you would be at a disadvantage in terms of knowledge and understanding of court practice and procedure.
MR. PHUA: Yes.
Although the district court informed Phua of some of the benefits of counsel and some of the hazards of proceeding without counsel, it did not advise Phua of the range of punishments that he then faced. Therefore, Phua’s waiver was invalid.[5]
B. Right to Pre-Sentence Allocution
Allocution has been defined as “the defendant’s right to speak before sentence is imposed,” and “ ‘has been recognized as a due process right under the Hawai'i Constitution.’ ” State v. Carvalho, 90 Hawai'i 280, 285, 978 P.2d 718, 723 (1999) (quoting State v. Davia, 87 Hawai'i 249, 255, 953 P.2d 1347, *523 1353 (1998)). This right is also codified in HRS § 706-646 (Supp.2006), which states: “Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant’s disposition.” In addition, Hawaii Rides of Penal Procedure (HRPP) Rule 32(a) (2006) states: “Before suspending or imposing sentence, the court shall address the defendant personally and afford a fair opportunity to the defendant and defendant’s counsel, if any, to make a statement and present any information in mitigation of punishment.” Thus, HRPP Rule 32(a) reiterates the nature of the right to allocution and also adds a procedural requirement that the court personally address the defendant.
Courts in Hawaii have recognized a violation of the right to allocution in at least three different situations. First, we have found a violation where the trial court has denied a defendant’s request to present evidence in mitigation of punishment. For example, in State v. Martin, 56 Haw. 292, 294, 535 P.2d 127, 128 (1975), this court held that a trial court had violated a defendant’s right to allo-cution when it refused to allow the defendant to supplement a pre-sentence report prior to imposing sentence. Second, we have recognized a violation of the right to allocution where the trial court proceeded to sentencing without affirmatively offering the defendant a “fair opportunity” to speak. See Carvalho, 90 Hawai'i at 285, 978 P.2d at 723; Davia, 87 Hawai'i at 255, 953 P.2d at 1353. The most instructive case concerning what constitutes a “fair opportunity” to speak is Schutter v. Soong, 76 Hawai'i 187, 873 P.2d 66 (1994).
In Schutter, an attorney made several contemptuous outbursts during a civil trial, and as a result, the court charged him with criminal contempt on two separate occasions. Id. at 193-94, 873 P.2d at 72-73. In both instances the court advised the attorney of the charge and then asked: “Do you understand the charges.” Id. Both times the attorney refuted the charge and renewed his verbal attacks on the court. Id. On appeal, this court stated: “[The attorney] was afforded an opportunity to be heard immediately following his citations during trial.... Clearly, had [the court] immediately sentenced [the attorney] following [his] allocution during trial, the conviction and sentences would be affirmed absent an abuse of discretion.” Id. at 207-08, 873 P.2d at 86-87. However, the trial court did not proceed to sentencing until a hearing several weeks later. Id. at 195, 873 P.2d at 74. At that hearing, the trial court found the attorney guilty of contempt and sentenced the attorney without offering him an opportunity to speak. Id. Accordingly, this court held that the attorney’s right to pre-sentence allocution had been violated. Id. at 208, 873 P.2d at 87. Thus, Schutter illustrates that while a “fair opportunity” to speak is essential, no specific colloquy is required. Indeed, the statement “Do you understand the charge” was deemed sufficient.
Finally, courts in Hawaii have recognized a violation of HRPP Rule 32(a) where the trial court failed to “address the defendant personally” regarding allocution. For example, in State v. Schaefer, 117 Hawai'i 490, 496-97, 184 P.3d 805, 811-12 (App.2008), the ICA held that although the trial court had asked the defendant’s attorney if the defendant wished to make a statement, the court had failed to comply with HRPP Rule 32(a) because it did not personally address the defendant regarding allocation. See also State v. Hoang, 94 Hawai'i 271, 281, 12 P.3d 371, 381 (App.2000) (stating that the court must solicit allocution directly from the defendant at sentencing).
Here, Phua argues that “the district court failed to afford [him] an opportunity to be heard prior to sentencing.” Phua also argues that “[t]he district court plainly erred when it failed to personally address [him] regarding his right to pre-sentence allocution.” These arguments lack merit.[6] First, contrary to Phua’s assertions, he was afforded a fair opportunity to be heard prior to sentencing. The record shows that the district court invited the state to make a sentencing recommendation and, immediately following that recommendation, stated: “Okay. And Mr. Phua, do you want to make any statement.” Phua used that opportunity to argue that his due process rights had been violated and that the district court lacked *524 jurisdiction. Therefore, not only was Phua afforded a “fair opportunity” to make a statement as that concept is defined in Schutter, Phua took advantage of that opportunity. Second, Phua’s contention that the district court failed to personally address him regarding allocution is also not supported by the record. The district court specifically stated: “Mr. Phua, do you want to make any statement.” Thus, the district court satisfied the requirements of HRPP Rule 32(a) by personally addressing the defendant regarding allocution.
Accordingly, I would hold that Phua’s right to pre-sentence allocution was not violated. Although Phua may not have appreciated that a primary purpose of allocution “is to provide the defendant an opportunity to plead for mitigation of the sentence,” Carvalho, 90 Hawai'i at 286, 978 P.2d at 724 (internal quotation marks and citation omitted), any constitutional infirmity is traceable to the violation of Phua’s right to counsel, not his right to allocution.[7]
II. CONCLUSION
For the foregoing reasons, I concur in the Majority’s holding that Phua’s waiver of his right to counsel was not knowing and intelligent. However, I maintain reservations about the Majority opinion because it obscures the distinction between constitutional requirements on the one hand and ideal but non-mandatory judicial practices on the other, and thus, may prove difficult to apply.

. The Majority does argue that it is erroneous to rely on Tovar for the proposition that "the warnings required by Miranda ... adequately inform[ ] the defendant ... of his Sixth Amendment right to counsel,” Tovar, 541 U.S. at 89, 124 S.Ct. 1379, because this statement related only to post-indictment questioning and would be inapplicable to sentencing proceedings. But regardless of the stage of proceeding, when it comes to informing the defendant that he or she has the right to counsel, the language of Miranda is the most widely-accepted language available.

. We also note that the district court was provided a pre-sentence report that contained information pertaining to Phua's educational background on August 22, 2011.

. The district court was also provided information regarding Phua's educational background in the pre-sentence report.

. Similarly, to effectuate a valid waiver prior to the entry of a guilty plea, the court must inform the defendant of the nature of the charges, the range of allowable punishments, and the defen *522 dant's right to be counseled regarding the plea. See Tovar, 541 U.S. at 81, 124 S.Ct. 1379.

. In addition, the district court did not tailor its colloquy to the disadvantages of self-representation at sentencing. See Patterson, 487 U.S. at 298, 108 S.Ct. 2389 (stating that the defendant should be made aware of the "assistance [a lawyer] could provide to an accused at that stage”) (emphasis added). Although the constitution does not mandate a particular colloquy, it would have been sufficient for the court to state: "At sentencing, counsel can help you present mitigating evidence to the court. Mitigating evidence may persuade the court to impose a less severe punishment. Without the aid of counsel, you may be less able to convey that information to the court and you may receive a more severe punishment, or even the maximum punishment.”

. In addition, Phua failed to raise these arguments to the ICA.

. I agree with the Majority’s statement that "[tjrial judges should, as a matter of good judicial administration,” ask the defendant: “Do you, ... [ (defendant's name) ], have anything to say before I pass sentence?” However, neither the Hawai'i Constitution, HRS § 706-604, nor HRPP Rule 32(a) require a specific allocution colloquy.