184 P.3d 805

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Steven SCHAEFER, Defendant–Appellant.**

**and**

**State of Hawai'i, Plaintiff–Appellee,**

v.

**April Esther Schaefer, also known as April Ester Paiva, Defendant–Appellant.**

**Nos. 26916, 26917.**

Intermediate Court of Appeals of Hawai'i.

April 30, 2008.

Hayden Aluli, Honolulu, Mimi Desjardins, on the briefs, for defendant-appellant.

Richard K. Minatoya, first deputy prosecuting attorney, County of Kauai, on the briefs, for plaintiff-appellee.

WATANABE, Presiding J., NAKAMURA, and FUJISE, JJ.

Opinion of the Court by WATANABE, Presiding J.

In these consolidated appeals from judgments entered by the District Court of the Fifth Circuit [1] (the district court) on October 1, 2004, Defendants–Appellants April Esther Schaefer (April), also known as April Ester Paiva, and Steven Schaefer (Steven) (collectively, Appellants) challenge, on several grounds, the sentences imposed against them following their convictions for nineteen misdemeanor offenses.

Since the record indicates that the district court failed to personally afford Steven and April an opportunity to make a statement prior to sentencing, we vacate their respective sentences and remand for resentencing before a different judge. We further instruct that on remand, the district court shall determine whether the pre-sentence investigation report (PSI) prepared for Steven and April, respectively, complied with the plea agreement that each entered into with Plaintiff–Appellee State of Hawai'i (the State). If the district court determines that the plea agreement was materially breached, the district court shall determine the appropriate remedy for the breach. Our disposition of this appeal renders it unnecessary to address the remaining points raised on appeal by Appellants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Complaints and Plea Agreements

By a complaint filed on February 9, 2004, the State charged Steven and April with committing the following offenses during the period between 1997 and 2000: seventeen counts of Theft in the Third Degree, in violation of Hawai'i Revised Statutes (HRS) §§ 708–830 and 708–832(1)(a); two counts of False and Fraudulent Statements, in violation of HRS § 231–36; and two counts of Willful Failure to File Return, in violation of HRS § 231–35. On March 18, 2004, the State filed a separate complaint against April, alleging the same offenses, and on April 1, 2004, the State filed a separate

amended complaint against Steven, alleging the same offenses.

On March 19, 2004, pursuant to separate but substantively identical plea agreements with the State, Steven and April pleaded no contest to seventeen counts of Theft in the Third Degree, one count of False and Fraudulent Statements, and one count of Willful Failure to File Return. They each executed a written change-of-plea form to which was appended an addendum. Steven's addendum stated, in relevant part:

I have entered into the following agreement with the government: in exchange for my pleas of No–Contest to the above listed counts: I stipulate that I will be jointly and severally liable for restitution in the amount of $31,202.00 to complainants, as well as $2674.57 to the State in reference to Count Five, and that I will sign a promissory note to this effect. I also agree to pay restitution in addition to this if proper documentation is provided prior to sentencing. The State agrees to exercise due diligence in obtaining this documentation and agrees that it must provide proof prior to sentencing or else be barred from requesting such documentation, unless there is a good faith basis as to why it is unable to provide said documentation by such time. I agree that a [PSI] will be completed prior to sentencing. The State acknowledges that I will be asking the court for a deferred acceptance of my no-contest pleas (DANC), and the State is free to object to my motion. The State agrees not to seek any further criminal charges against me involving the complainants in these cases. There are no other agreements as to sentencing.

(Emphasis added.) April's addendum was identical, except that: (1) it did not include the sentence immediately following the underscored sentence regarding deferral of the no-contest plea; and (2) in the sixth line, reference is to Count Four instead of Count Five. The district court accepted the no-contest pleas, ordered a PSI for both Steven and April, and continued the sentencing hearing until July 2, 2004.

1. The Honorable Trudy K. Senda presided.

B. *The PSIs Prepared for Steven and April*

On or about June 29, 2004, Senior Probation Officer Lynn A. Garcia (Garcia) submitted to the district court a "partial Presentence [Investigation] Report" (Partial PSI) [2] for Steven and April, respectively. Included in each Partial PSI was the following information:

- The names of the judge, defense counsel, and deputy prosecuting attorney [(DPA)] involved in Appellants' respective cases;

- The original charges against Appellants, the final charges to which they had pleaded no contest, the date and type of their pleas, their current custody status, their respective case numbers, their pretrial detainment dates, and their expected sentencing date;

- Identifying data about Appellants, including their respective alias(es), sex, race, birthplace, age, birthdate, social security number, Federal Bureau of Investigation number, State of Hawai'i identification number, address, telephone number, height, weight, eye color, and visible scars or marks;

- A description and summary of the circumstances related to the commission of the offenses with which they were charged;

- Statements submitted by Appellants' victims that itemized their financial losses, described the physical or psychological harm they suffered as a result of Appellants' actions, and requested restitution for their losses;

- Information summarizing the juvenile and adult criminal records of Steven and April, as well as a copy of a printout from the State of Hawai'i Criminal Justice Information System that documented their respective criminal histories in Hawai'i;

- Letters of character reference submitted on behalf of Steven and April; and

- A discussion of the disposition and sentencing alternatives applicable to Steven and April, as well as the name of the person who prepared the reports and the date on which the reports were completed.

The Partial PSIs, each exceeding 200 pages in length, were apparently sent to Appellants sometime in July 2004. Appellants subsequently requested a continuance until August 13, 2004 to review their respective PSIs, and the parties stipulated to two further continuances thereafter.

C. *The October 1, 2004 Sentencing Hearing*

Appellants did not challenge the adequacy of the Partial PSIs until the sentencing hearing held on October 1, 2004. At that time, Steven and April jointly moved the district court "to order the preparation of a full presentence investigation report" (full PSI). In support of their oral motion, Appellants called two witnesses involved with the preparation of their PSIs: Adult Client Probation Services Branch supervisor Sharon Nakasone (Nakasone), and Garcia, the probation officer who prepared the Partial PSIs.

Nakasone testified that although she did not prepare the Partial PSI for either Steven or April, she "did the proxy, which determined what kind of pre-sentence report would be done on these cases." Nakasone explained that a "proxy" is part of the Level of Service Inventory program implemented statewide as of March 31, 2004, which helps probation officers "decide what kind of pre-sentence report to do." According to Nakasone,

[t]he proxy is based on three things: A defendant's age at first arrest; number of prior arrests; and their current age.

. . . .

... Based on the defendant's proxy score, if the score is five or higher, we would then conduct a full pre-sentence investigation. Any score of four or lower, in a misdemeanor case, would result in a partial pre-sentence report.

---

2. As used in this opinion, the term "Partial PSI" (with the first letter of each word capitalized) refers specifically to the respective PSIs prepared for Steven or April individually. The term "Partial PSIs" refers collectively to the PSIs prepared for Steven and April.

Nakasone later clarified that the proxy score alone determines whether a full or partial PSI is prepared for a defendant, regardless of whether the defendant is charged with a felony or misdemeanor.

Nakasone testified that a standard or full PSI normally takes sixty days to complete. A partial PSI, on the other hand, "is, basically, like a record check, where we would include a copy of the police report, the defendant's criminal record, and our sentencing alternatives, and that would be it." Upon further questioning, Nakasone admitted that a partial PSI does not address the factors to be considered in imposing a term of probation, as listed in HRS § 706–621 (1993).[3] Nakasone agreed, however, that a full PSI would include a consideration of all these factors.

Nakasone stated that all defendants are given the opportunity to provide the court with a written statement that is relevant towards disposition of their case. However, in preparing a partial PSI, probation officers are not required to meet face-to-face with defendants, so typically, probation officers inform defendants of this opportunity by letter. Moreover, a probation officer preparing a partial PSI does not generally give a defendant the opportunity to submit documents, letters, or certificates in support, mitigation, or recommendation of the defendant, an opportunity that is provided to a defendant for whom a full PSI is prepared.

Garcia, the probation officer who prepared the Partial PSIs for Steven and April, testified next. She acknowledged that the Partial PSIs did not include a copy of the police reports for Steven or April. Instead, they included a summary that she "wrote up ... from the police report." Garcia testified that she was familiar with the probation factors set forth in HRS § 706–621 but did not include comments on these factors in the Partial PSIs prepared for Steven and April. Garcia stated that she did not have a face-to-face meeting with either Steven or April. Additionally, she was unsure whether she communicated in writing to either Steven or April that they could provide letters of recommendation for inclusion in the Partial PSIs submitted to the court. Garcia did not advise Appellants to submit documents that explained their financial situation, nor investigate whether they had the ability to pay restitution, issues she would have addressed in a full PSI.

Appellants thereafter argued that they had a statutory right to a "full PSI" and that the use of a "proxy score" to determine whether a full or partial PSI would be prepared left the Probation Office "with unbridled discretion." Appellants requested that the district court order a full PSI so they could have "a meaningful opportunity to meet all th[e] factors" set forth in HRS § 706–621 to "meaningfully ... participate in discussion of whether or not probation is warranted" for Steven and April.

3. HRS § 706–621 provides as follows:
 **Factors to be considered in imposing a term of probation.** The court, in determining whether to impose a term of probation, shall consider:
 (1) The factors set forth in section 706–606 to the extent that they are applicable;
 (2) The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:
 (a) The defendant's criminal conduct neither caused nor threatened serious harm;
 (b) The defendant acted under a strong provocation;
 (c) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
 (d) The victim of the defendant's criminal conduct induced or facilitated its commission;
 (e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
 (f) The defendant's criminal conduct was the result of circumstances unlikely to recur;
 (g) The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;
 (h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both;
 (i) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents; and
 (j) The expedited sentencing program set forth in section 706–606.3, if the defendant has qualified for that sentencing program.

The district court denied their request, noting that Appellants had been given ample opportunity to review the Partial PSIs but did not object to their content or scope until the sentencing hearing. The district court also observed that Appellants, through their counsels, had "the opportunity to compile any and all documentation they wish[ed] for presentation to the Court for consideration at the time of sentencing" and could make arguments as to any of the probation factors set forth in HRS § 706–621. Additionally, the district court explained that a partial PSI "is simply one leg that the Court can look at in considering what options are available for sentencing, facts and circumstances surrounding the offense, aggravating or mitigating factors[.]" The district court commented that it "is not bound to follow everything in the [Partial] PSI[,]" and "[e]ven in the case of a full PSI . . . , the Court is free to disregard or accept the recommendation in whole or in part."

Thereafter, in response to Appellants' oral motion to strike inaccurate, unsubstantiated, and derogatory information, the district court agreed to strike certain portions of the Partial PSIs.[4] The district court did not strike Garcia's summary of the facts and circumstances surrounding the offenses to which Appellants pleaded no contest, as gleaned from the police reports prepared after Appellants' arrests.

### D. Alleged Prosecutorial Misconduct Due to Trial Publicity

At the sentencing hearing, Appellants made two other oral motions that were denied by the district court and are at issue on appeal. First, Appellants moved to dismiss the respective complaints against them on grounds that extrajudicial statements by the DPA that appeared in a front-page article of The Garden Island newspaper[5] on August 24, 2004 violated Hawai'i Rules of Professional Conduct Rule 3.6, relating to trial publicity, and "so tainted [Appellants'] right to a

fair sentencing" that "the matter should be dismissed at the outset." The district court judge, in response to a question posed by defense counsel, stated that she had "glanced through" the article but "didn't really digest it very carefully." The district court also commented:

[T]here seems to be some belief, which I consider to be a mistaken belief, that an article that's published in a local newspaper is (A) going to be accepted to be the truth, the whole truth, and nothing but the truth by the Court; and (B) even if it was, that the Court is somehow unable to carry out its duties in terms of sentencing without being biased by a newspaper article.

Second, based on the alleged negative impact generated by the newspaper article, Appellants jointly moved to change the venue of the sentencing hearing to another district court outside Kaua'i. The district court denied the motion and stated:

If counsels or their clients feel that there was a violation, the appropriate route for you to explore or to go to is the Office of Disciplinary Council [sic] [ (ODC) ], where anyone can file a complaint about any attorney that practices in the state of Hawaii, and ODC will look into your complaint and investigate.

### E. The Pre–Sentence Allocution and Imposition of Sentence

Prior to ruling on Steven's DANC plea and imposing sentence on Appellants, the district court asked Appellants' respective attorneys if their clients wished to make statements directly to the court. The attorneys for both Steven and April responded that their clients did not wish to address the court. The district court subsequently accepted Appellants' respective no-contest pleas, denied Steven's DANC plea, and sentenced Appellants, consonant with their plea agreements, to serve concurrent one-year terms of imprisonment

---

4. For example, the district court struck several unsigned letters or documents from individuals who claimed to have suffered damages as a result of Appellants' conduct but were not complaining witnesses in the underlying cases.

5. The article in The Garden Island was headlined *Kupuna swindled by sovereign fakes* and included a sub-headline entitled *Attorney: Nearly 20 Kauaians lost money and property to trusted pair.* The DPA was quoted in several paragraphs of the article.

for each of the nineteen misdemeanor offenses they were found guilty of committing and to pay restitution, jointly and severally, in the amount of $33,876.57.

Appellants were soon thereafter released from custody pursuant to their joint motion for bail pending appeal. A notice of joint appeal was timely filed on October 13, 2004.

## II. *ISSUES ON APPEAL*

Appellants allege that the district court:

(1) Violated their procedural due-process rights under HRS § 706–604 (1993)[6] by denying their oral motion for preparation of a full PSI;

(2) Violated their procedural due-process rights under HRS § 706–604 by denying their oral motion to strike inaccurate, unsubstantiated, and derogatory information from the Partial PSIs;

(3) Erroneously denied their oral motion to dismiss the charges against them due to prosecutorial misconduct surrounding pre-sentence publicity;

(4) Improperly denied their oral motion to change the venue of their sentencing hearing to a location where pre-sentence publicity did not exist; and

(5) Erroneously failed to directly obtain from them a knowing, voluntary, and intelligent waiver of their constitutional right to pre-sentence allocution.

## III. *DISCUSSION*

### A. *Appellants' Right to Pre–Sentence Allocution Was Violated.*

We turn first to Appellants' argument that the district court plainly erred "by failing to obtain a knowing, voluntary, and intel-

ligent waiver of the constitutional right to sentencing allocution directly from [them], personally, before imposing sentence." We need not reach the waiver issue, however, because we conclude that the district court plainly erred when it failed to personally address Appellants regarding their right to pre-sentence allocution, a procedure required by Hawai'i Rules of Penal Procedure (HRPP) Rule 32(a) (2003).[7]

HRPP Rule 32(a) currently provides, as it did at the time of the sentencing hearing:

**Rule 32. SENTENCE AND JUDGMENT.**

(a) **Sentence.** After adjudication of guilt, sentence shall be imposed without unreasonable delay. Pending sentence, the court may commit the defendant or continue or alter bail, subject to applicable provisions of law. *Before suspending or imposing sentence, the court shall address the defendant personally* and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment.

(Emphasis added).

In this case, the district court engaged in the following colloquy with Appellants' respective counsel prior to imposing sentence on Appellants:

THE COURT: Did your clients wish to make statements directly to the Court?

Does your client wish to make a statement?

[April's Counsel]: [April] does not wish to address the Court.

THE COURT: Does [Steven] wish to address the Court?

---

**6.** At the time that Steven and April were charged, HRS § 706–604 provided, in relevant part, as follows:

> **Opportunity to be heard with respect to sentence; notice of pre-sentence report; opportunity to controvert or supplement; transmission of report to department.**
> (1) Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.
> (2) The court shall furnish to the defendant or the defendant's counsel and to the prosecut-

ing attorney a copy of the report of any presentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them.

**7.** *Cf.* HRS § 706–604(1), which also addresses a defendant's right to pre-sentence allocution but does not explicitly require the court to personally address a defendant regarding allocution. *See* footnote 6, supra.

[Steven's Counsel]: [Steven] does not, Your Honor.

Thus, it is readily apparent that the district court violated HRPP Rule 32(a) by addressing Appellants through their counsel, rather than addressing them personally.

In *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), the United States Supreme Court was called upon to construe Rule 32(a) of the Federal Rules of Criminal Procedure (Fed.R.Crim.P.), which, at the time, provided: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his [or her] own behalf and to present any information in mitigation of punishment." Unlike HRPP Rule 32(a), the version of Fed. R.Crim.P. Rule 32(a) then in effect did not explicitly require the court to "address the defendant personally" before imposing a sentence. Nevertheless, the Supreme Court rejected the government's contention that Fed. R.Crim.P. Rule 32(a) could be satisfied by merely affording a defendant's counsel the opportunity to make a statement for the defendant prior to the defendant's sentencing. The Court stated:

> The design of Rule 32(a) did not begin with its promulgation; its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he [or she] had anything to say before sentence was imposed required reversal. Taken in the context of its history, there can be little doubt that *the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence.* We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his [or her] own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens *the need for the defendant, personally, to have the opportunity*

*to present to the court his [or her] plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself [or herself].* We are buttressed in this conclusion by the fact that the Rule explicitly affords the defendant two rights: 'to make a statement in his [or her] own behalf,' and 'to present any information in mitigation of punishment.' *We therefore reject the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32(a).*

*Green,* 365 U.S. at 304, 81 S.Ct. at 655 (citations omitted and emphases added). Although concluding on the record before it that the defendant was not denied the opportunity for allocution afforded by Fed. R.Crim.P. Rule 32(a), the Supreme Court held:

> [T]o avoid litigation arising out of ambiguous records in order to determine whether the trial judge did address himself [or herself] to the defendant personally, we think that the problem should be, as it readily can be, taken out of the realm of controversy. This is easily accomplished. Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. *Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.*

*Id.* at 305, 81 S.Ct. at 655 (emphasis added).

■ In response to *Green,* Fed.R.Crim.P. Rule 32(a) was amended in 1966 to require a court, prior to imposing sentence, to "address the defendant personally and ask him [or her] if he [or she] wishes to make a statement." Fed.R.Crim.P. Rule 32(i)(4)(A)(ii). *See* Advisory Committee Notes to 1966 amendment, reprinted in 3C Charles Alan Wright, Nancy J. King, Susan R. Klein, Andrew D. Leipold, Peter J. Henning & Sarah N. Welling, Federal Practice and Procedure at 253 (2007). Since then, the federal circuits that have considered the issue have overwhelmingly concluded that the amended rule, read in conjunction with *Green,* requires a sentencing court, prior to sentencing, to per-

sonally invite the defendant to make a statement on his or her behalf and present information in mitigation of the sentence. *See United States v. Buckley,* 847 F.2d 991, 1002 (1st Cir.1988); *United States v. Adams,* 252 F.3d 276, 279 (3d Cir.2001); *United States v. Miller,* 849 F.2d 896, 897 (4th Cir.1988); *United States v. Riascos–Suarez,* 73 F.3d 616, 627 (6th Cir.1996); *United States v. Thomas,* 875 F.2d 559, 561 (6th Cir.1989); *United States v. Van Drunen,* 501 F.2d 1393, 1399 (7th Cir.1974); *United States v. Walker,* 896 F.2d 295, 300–01 (8th Cir.1990); *United States v. Medrano,* 5 F.3d 1214, 1219 (9th Cir.1993); *United States v. Phillips,* 936 F.2d 1252, 1255–56 (11th Cir.1991).

■ Hawai'i case law also explicitly supports a defendant's personal right to allocution. In *State v. Chow,* 77 Hawai'i 241, 883 P.2d 663 (App.1994), this court, interpreting *Schutter v. Soong,* 76 Hawai'i 187, 873 P.2d 66 (1994), held that "the right of allocution is a right guaranteed under the due process clause, article I, section 5, of the Constitution of the State of Hawai'i." *Chow,* 77 Hawai'i at 247, 883 P.2d at 669. We also expressed "doubt that the denial of presentence allocution can ever be harmless error[,]" *id.* at 251, 883 P.2d at 673, and stated:

> We know of no effective or adequate manner in which a defendant's right of presentence allocution may be constitutionally realized than to affirmatively require that the trial court make *direct inquiry* of the defendant's wish to address the court before sentence is imposed.

*Id.* at 247, 883 P.2d at 669 (emphasis added). Additionally, we explained that

> [t]he right [to allocution] is one easily administered by the trial court by the following inquiry: "Do you, [ (defendant's name) ], have anything to say before I pass sentence?"

*Id.* at 248, 883 P.2d at 670 (internal quotation marks and ellipsis omitted). Thus, a sentencing court may not merely address a defendant's attorney regarding the defendant's right to allocution; the court must personally ask each defendant, prior to sentencing, whether he or she has anything to say to the court.

■ The State concedes that the district court violated HRPP Rule 32 when it failed to personally address Steven and April regarding their respective rights to pre-sentence allocution. The remedy for denial of a defendant's right to pre-sentence allocution is a remand for resentencing before a new sentencing judge. *Schutter,* 76 Hawai'i at 208, 873 P.2d at 87. Accordingly, we have no alternative but to remand these cases for resentencing before a different judge. In light of our remand, it is unnecessary for us to address Appellants' third and fourth points of error regarding prosecutorial misconduct and trial publicity.

## B. *The Adequacy of the Partial PSIs*

HRS § 706–601 (1993 & Supp.2007) provides currently, as it did when Appellants were charged and sentenced, as follows:

> **Pre-sentence diagnosis and report.**(1) Except as provided in subsections (3) and (4), *the court shall order a pre-sentence correctional diagnosis of the defendant and accord due consideration to a written report of the diagnosis before imposing sentence where:*
>
> (a) *The defendant has been convicted of a felony;* or
>
> (b) *The defendant is less than twenty-two years of age and has been convicted of a crime.*
>
> (2) *The court may order a pre-sentence diagnosis in any other case.*
>
> (3) With the consent of the court, the requirement of a pre-sentence diagnosis may be waived by agreement of both the defendant and the prosecuting attorney.
>
> (4) The court on its own motion may waive a pre-sentence correctional diagnosis where:
>
> (a) A prior pre-sentence diagnosis was completed within one year preceding the sentencing in the instant case;
>
> (b) The defendant is being sentenced for murder or attempted murder in any degree; or
>
> (c) The sentence was agreed to by the parties and approved by the court under

rule 11 of the Hawaii rules of penal procedure.

(Emphases added.)

Regarding the content of PSIs, HRS § 706–602(1) requires currently, as it did when Appellants were sentenced, as follows:

**Pre-sentence diagnosis, notice to victims, and report.** (1) The pre-sentence diagnosis and report shall be made by personnel assigned to the court, intake service center or other agency designated by the court and shall include:

 (a) An analysis of the circumstances attending the commission of the crime;
 (b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;
 (c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;
 (d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11; [8] and
 (e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.

(Footnote added.) The Commentary on the foregoing statute notes, in part, as follows:

This section sets forth the topics required to be covered in the pre-sentence investigation and report. *The [Hawaii Penal] Code recognizes that these topics constitute a minimum of the information which should be before the sentencing judge.* Additional matters may be included by the pre-sentence investigator. A defendant is protected against the inclusion of unfounded facts, derogatory information, statements and conclusions by the

provision of § 706–604 providing for notice and opportunity to controvert.

(Emphasis added.)

Nothing in HRS § 706–602(1) expressly requires that a PSI include an evaluation of the "[f]actors to be considered in imposing a term of probation[,]" listed in HRS § 706–621. Similarly, nothing in HRS § 706–621 expressly requires that the factors listed in HRS § 706–621 be discussed in a PSI made pursuant to HRS § 706–602(1). Although it is apparently the practice of probation officers to evaluate the factors listed in HRS § 706–621 whenever they prepare a "full PSI," this practice is not statutorily required, unless the sentencing court specifically directs that such information be included pursuant to HRS § 706–602(1)(e). With respect to defendants for whom a PSI is statutorily required, therefore, the PSI must, at a minimum, include all the information required by HRS § 706–602(1).

In this case, it is undisputed that Appellants were convicted of misdemeanor offenses and were more than twenty-two years old at the time of their convictions. Therefore, the district court was not statutorily required to order the preparation of a PSI for Appellants before sentencing them. HRS § 706–602(1). *See also State v. Medeiros,* 8 Haw.App. 39, 46, 791 P.2d 730, 735 (1990), *overruled on other grounds by Schutter,* 76 Hawai'i at 208, 873 P.2d at 87 (holding that the "court was not required to order a pre-sentence report before imposing sentence, although it could have done so under HRS § 706–601(2)[,]" where the defendant was convicted of a petty misdemeanor and was thirty-one years old).

As part of their plea agreements with the State, Appellants "agree[d] that a [PSI] will be completed prior to sentencing." It is not clear from the record whether this provision was included at the request of the prosecution or the defense. However, a sentencing court is not bound by the terms of a plea agreement unless the court explicitly

8. HRS § 806–11 concerns the disposal of firearms.

**500**

agrees to be so bound. HRPP Rule 11(e).[9] Therefore, the parties could not have compelled the sentencing court, as part of their plea agreements, to order the preparation of a PSI that was not statutorily required.

The transcript of the March 19, 2004 hearing at which the district court accepted Appellants' no-contest pleas is not included in the record on appeal. A court clerk's notation on the "Criminal Trial Calendar" for the March 19, 2004 hearing, which is included in the record, states that the district court "will ordere [sic] full PSI and sentencing will be continued to 7/2/04 at 10:30 AM[.]" However, at the further continued sentencing hearing on October 1, 2004, neither Steven nor April pointed out that the district court had ordered a full PSI and the discussion focused on whether the district court *should* order a full PSI. At this hearing, the district court denied Appellants' oral request for preparation of a full PSI.

On appeal, Appellants argue that the Partial PSIs prepared for them were insufficient because they did not include all the information that a PSI "shall include" pursuant to HRS § 706–602. Appellants also argue that the Partial PSIs failed to address the factors enumerated in HRS § 706–621, in violation of their substantive and procedural due-process rights to have the district court consider all accurate information material to sentencing.

■ Our review indicates that the Partial PSIs prepared for Steven and April complied with HRS § 706–602(1)(a), (c), (d), and (e) and included far more information than Nakasone testified was normally included in a "partial PSI." Specifically, Section 3 of the

Partial PSIs described the circumstances attending the commission of the crimes for which Appellants were convicted, as required by HRS § 706–602(1)(a). Additionally, victim statements that met the requirements of HRS § 706–602(1)(c) were attached to the Partial PSIs. Moreover, since no order appears to have been issued pursuant to HRS § 806–11,[10] subsection (d) of HRS § 706–602 was inapplicable to Appellants' PSIs. Finally, subsection (e), which is wholly discretionary, was not applicable to Appellants in this case.

However, the requirements imposed by subsection (b) of HRS § 706–602(1) were not fully met. The Partial PSIs included information about the "history of delinquency or criminality" of Steven and April, respectively, in the form of Criminal Justice Information System reports. The Partial PSIs also contained a brief description of Steven's and April's respective physical attributes. However, the Partial PSIs did not include the following information required by subsection (b): "mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of [their] crimes for loss or damage caused thereby, education, occupation, and personal habits[.]" HRS § 706–602(1)(b). Thus, the Partial PSIs were deficient when measured against the statutory requirements for a PSI that are set forth in HRS § 706–602(1)(b).

It is not clear from the docketed record on appeal what Appellants and the State expected when they agreed that a PSI would be completed prior to sentencing. It is also not clear whether the district court agreed to be bound by the plea agreements, whether the

9. HRPP Rule 11(e) provides, in relevant part:

(e) **Plea Agreement.**
(1) IN GENERAL The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. *The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.*

(2) NOTICE OF PLEA AGREEMENT. Any plea agreement shall be disclosed by the parties to the court at the time the defendant tenders the defendant's plea. Failure by the prosecutor to comply with such agreement shall be grounds for withdrawal of the plea.
(3) WARNING TO DEFENDANT. Upon disclosure of any plea agreement, the court shall not accept the tendered plea unless the defendant is informed that the court is not bound by such agreement, unless the court agreed otherwise. (Emphasis added.)

10. *See* footnote 8, supra.

district court ordered a "full PSI" at the time it accepted Appellants' no-contest pleas, and if so, what the district court expected to be included in the "full PSI." When Appellants complained about the Partial PSIs at sentencing, the district court denied their requests for a "full PSI" without determining the scope of the parties' plea agreements and whether the Partial PSIs were a material breach of the plea agreements. On remand, the district court shall make this determination.

If the resentencing judge determines that the Partial PSIs materially breached the parties' plea agreements, the resentencing judge shall either (1) allow Appellants to withdraw their no-contest pleas, or (2) order the Partial PSIs to be amended or supplemented to satisfy the parties' plea agreements. *See State v. Abbott,* 79 Hawai'i 317, 321, 901 P.2d 1296, 1300 (App.1995). If alternative 2 applies, the district court shall duly consider the Partial PSIs, as supplemented, in resentencing Steven and April.

C. *The District Court's Failure to Strike Certain Information from the Partial PSIs Did Not Violate Appellants' Due–Process Rights.*

 Garcia testified that she did not include a copy of the police reports related to Appellants' alleged offenses in the Partial PSIs prepared for Steven and April. Instead, she used these police reports to summarize Appellants' crimes. Appellants argue that since no police reports were included in the Partial PSIs, the district court violated their right to due process of law by failing to strike the following paragraph from the Partial PSIs:

> During the period between 1997 and 2000, [April] and her husband, co-defendant, [Steven], [11] preyed on several Kauai residents. They used religion as a means to gain the peoples [sic] trust and loyalty then plundered their assets. They denounced the merits of taxation, mortgages and other bank debts, and of government in general. They told their followers that as members of their church, they would help them to "discharge" their debts. In

order to accomplish this, the members were charged varying processing and filing fees. Payments were mainly required in cash. Members lost hundreds of thousands of dollars and eventually lost their properties, with some continuing to pay monies owed on taxes and lost property.

(Footnote added.) Appellants also argue that the foregoing "derogatory and unsubstantiated 'summary' clearly violates [HRS] §§ 706–602 and 706–604."

There is no specific requirement in HRS § 706–602 that a PSI contain a police report. Additionally, Appellants do not explain how the summary in the PSIs was "derogatory and unsubstantiated" or violated HRS §§ 706–602 and 706–604. Moreover, citing the Commentary on HRS § 706–602, Appellants acknowledge in their opening briefs that "[a] defendant is protected against the inclusion of unfounded facts, derogatory information, statements and conclusions by the provision of [HRS] § 706–604 providing for notice and opportunity to controvert." It is axiomatic that "[t]he basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation[.]" *Sandy Beach Defense Fund v. City Council of Honolulu,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). The record indicates that Appellants were afforded their right under HRS § 706–602(2) to be meaningfully heard or to controvert any "unfounded facts, derogatory information, statements and conclusions" in the Partial PSIs, a right similar in principle to, but different from, the right to pre-sentence allocution. Indeed, Appellants received the Partial PSIs in late June or early July 2004, months before their October 2004 sentencing hearing. Therefore, Appellants' argument that the district court violated their right to due process when it denied their motion to strike is without merit.

IV. *CONCLUSION*

In light of the foregoing discussion, we vacate the judgments entered by the district court on October 1, 2004 and remand for

---

**11.** This excerpt is from April's PSI. An almost identical statement exists in Steven's PSI.

resentencing before a different district court judge of the Fifth Circuit, in accordance with the instructions set forth in this opinion.

